Hay, J.
 

 Two questions are involved in a determination of this case: First: Was there such an election of remedial rights by the Nyes in filing and pressing the Seneca county case as prevents them from asserting their claims in equity in the Hancock county case? Second: If there was such an election, which controls as to the Morgans, does the same operate as to their grantee, Frederickson?
 

 The petition filed in the instant case, in Han
 
 *464
 
 cock county, among other averments, pleads as follows:
 

 “The legal title to which now stands in the name of the defendant, Elbin Morgan, but which in equity, in view of said fraud these plaintiffs furnished the consideration for its purchase, and the defendants and neither of them have any just or equitable right to the same or any part or any interest therein. * * * Wherefore, plaintiffs pray that a trust for them be established and declared in said Findlay real estate above described and enforced for their protection, and they be decreed to be the real owners of the same.”
 

 In the petition of plaintiffs filed in the action in Seneca county there appear, among other declarations, the following averments:
 

 “These plaintiffs relying upon the representations as to the worth of the said 'defendants, and the value of said farm, were induced to and did sell the said property, real estate, and goods of the value of $12,500 to the said Elbin Morgan, no part of which said sum has been paid * * * and Elbin Morgan immediately went to Findlay and conveyed plaintiff’s property in Hessville, to one Harry D. Culler, and received in consideration for the real estate, property and goods which these plaintiffs had conveyed to the defendants a certain business block in the city of Findlay, Ohio. * * *
 

 “Plaintiffs say that by reason of the facts herein alleged they have been defrauded in the sum of $10,000 together with interest thereon from the 10th day of January, 1922, for which amount they pray judgment. Wherefore, plaintiffs pray that they may have judgment in the sum of $10,000 with
 
 *465
 
 interest * * * and that a restraining order issue from this court temporarily restraining and enjoining the defendants and each of them from disposing of, conveying, selling or incumbering the
 
 property belonging
 
 in
 
 the said defendants * * *
 
 and that these plaintiffs may be first paid the same sum of $10,000 coming into the hands of the said receiver.”
 

 It is apparent that the petition in the Hancock county case avers the legal title to the Findlay block as in the Morgans and Frederickson, and the equitable title as in the Nyes, and that the action was clearly one in equity seeking to establish a constructive trust in the property in question in favor of the Nyes.
 

 It is equally apparent that the action in the Seneca county ease avers the title to the property, both legal and equitable, as in the Morgans, and what the plaintiffs wanted was a judgment for $10,000, the amount of which they claimed to have been defrauded, and that the property should be sequestered or sold to pay the same. This was an action at law in deceit with a prayer for money judgment.
 

 "Were these remedial rights which the Nyes were seeking to establish so inconsistent that the selection of one would be a bar to the assertion of the other?
 

 It is to be noted that tinder the theory of one case, to wit, the law action in deceit (Seneca county), the title to the property is averred to be in the Morgans. In the other ease, while the legal title is conceded to be in the Morgans and their grantee, the equitable title is claimed to be in the Nyes.
 

 Manifestly the Nyes could not claim that the
 
 *466
 
 property belonged to tbe defendants below and ask a money judgment and at the same time maintain an action upon the basis that the property did not* belong to the defendants below, but in equity belonged to them.
 

 At some stage the Nyes must necessarily be put to their election. An election of remedial rights is a choice made with knowledge between two inconsistent substantive rights, either of which may be instituted at the instance .of the chooser, who cannot, however, enjoy both. Such an election goes not to the form, but to the substance, affecting some right of title selected. Such a choice, therefore, discards the alternative inconsistent right or claim.
 

 An election of- remedies or forms of action or procedure does not necessarily involve a choice as between two existing substantive rights. ■ A form of action or remedy is but a means of administering justice rather than an end in itself. There is, therefore, a marked distinction between an election between remedies or forms of action and an election of remedial rights. One goes to the substance and the other to the form. Where the remedies afforded are inconsistent, it is the election of one that bars the other; where- they are consistent, it is the satisfaction which operates as a bar. It is the inconsistency of the demands that makes the election of one remedial right an estoppel against the assertion, of the other, and not the fact that the forms of action are different.
 

 The theory of the ¡Seneca county case was that the title to the property was in the Morgans and
 
 *467
 
 their grantee, and a money judgment was the relief sought. It amounted to an affirmance of the contract of conveyance of the properties in question. On the other hand the theory of the Hancock county case, being the action in equity, was that of disaffirmance of the contract of conveyance of the property, and assertion that while the legal title passed the equitable title was in the Nyes.
 

 Now, a remedy based on the theory of an affirmance of the contract, or other transaction, is inconsistent with a remedy arising out of the same facts based on the theory of its disaffirmance or rescission, so that the election of either must be an abandonment of the other.
 

 As we view the case presented, in order to make the two cases brought by the Nyes consistent, the Seneca county case must be treated and regarded as an action in equity for relief upon the ground of fraud, but unfortunately the averments of the petition charging that the property belonged to the defendants and asking for a judgment in the sum of $10,000 make the case one at law as an action in deceit based on fraud.
 

 It is true that there is a prayer for injunction and a receiver, but this does not make the action one in equity. As is said by Matthias, J., in
 
 Complete Building Show Co.
 
 v.
 
 Albertson,
 
 99 Ohio St., 11, 15, 121 N. E., 817, 818:
 

 “But an action for the recovery of money as a debt or as damages is essentially an action at law and cannot be converted into a suit in equity by the mere use of words and phrases usually found onlv in pleadings in equitable actions, no matter how
 
 *468
 
 often repeated nor the extent of variation of such allegations. The essential and material averments of the petition will be scrutinized, and the pleading, stripped of all surplus and immaterial statements, examined to ascertain the essential character of the action.
 
 *
 
 * * The only equitable relief prayed for in this action is that of injunction, and that does not appear to have been urged. Even if it were, it was merely ancillary and incidental and cannot serve to change the nature of an action from one at law to a suit in chancery.”
 

 The authorities denying the right to pursue one remedy after having already elected another in- . consistent one are numerous:
 

 Clark
 
 v.
 
 Kirby,
 
 204 App. Div., 447, 451, 198 N. Y. Supp., 172, 175:
 

 “The law is elementary that where one has suffered by reason of the misrepresentation of another, and has been led to part with his money in reliance upon said false and fraudulent misrepresentation, he has three independent remedies : First, he may affirm the contract into which he had been induced to enter and sue for his damages for the fraud perpetrated upon him. Second, he may rescind the contract itself and bring action to recover back the moneys which he has paid. Third, he may bring an action in the nature of the action at bar in a court of equity to obtain a rescission of the contract into which he had been induced to enter, with incidental relief. An action for rescission is entirely independent and inconsistent .with an action for damages by reason of the false and fraudulent representations. In the first [third] action the contract is treated
 
 *469
 
 as a nullity and the plaintiff asks the intervention of a court of equity to obtain a nullification of said contract. In the action for damages for fraudulent representations which induced him to enter into the contract, he affirms the contract and brings his action to recover damages by reason of such false representations. In the one action he treats the contract as nonexistent, and in the other action he affirms the contract. Each remedy is inconsistent with the other.”
 

 Grizzard
 
 v.
 
 Fite,
 
 137 Tenn., 103, 191 S. W., 969, L. R. A., 1917D, 652:
 

 “The Supreme Judicial Court of Massachusetts in
 
 Connihan
 
 v.
 
 Thompson,
 
 111 Mass., 270, stated the doctrine thus: ‘The defense of waiver by election arises where the remedies are inconsistent; as where one action is founded on an affirmance, and the other upon the disaffirmance, of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties once for all. The institution of a suit -is such a decisive act; and if its maintenance necessarily involves an election to affirm or disaffirm a voidable contract or sale, or to rescind one, it is generally held to be a conclusive waiver of inconsistent rights, and thus to defeat any action subsequently brought thereon.’ ”
 

 Robb v.
 
 Vos,
 
 155 U. S., 13, 43, 15 Sup. Ct., 4, 39 L. Ed., 63, reviews a great number of cases from that court, as well as from the highest courts of several of the states, and concludes as follows:
 

 “The rule established by these cases is that any decisive act by a party, with knowledge of his
 
 *470
 
 rights and of the facts, determines his election in the ease of inconsistent remedies, and that one of the most unequivocal methods of showing ratification of an agent’s act is the bringing of an action based upon such an act.”
 

 See
 
 Kinney
 
 v.
 
 Kiernan,
 
 49 N. Y., 164;
 
 Moller
 
 v.
 
 Tuska,
 
 87 N. Y., 166;
 
 Farwell
 
 v.
 
 Myers,
 
 59 Mich., 179, 26 N. W., 328;
 
 Acer
 
 v.
 
 Hotchkiss,
 
 97 N. Y., 395; the English cases cited in 10 Am. St. Rep., 487;
 
 Sanger
 
 v.
 
 Wood,
 
 3 Johns. Ch. (N. Y.) 416;
 
 Lloyd
 
 v.
 
 Brewster,
 
 4 Paige (N. Y.) 537, 27 Am. Dec., 88;
 
 Bulkley
 
 v.
 
 Morgan,
 
 46 Conn., 393;
 
 O’Donald
 
 v.
 
 Constant,
 
 82 Ind., 212;
 
 Theusen
 
 v.
 
 Bryan,
 
 113 Iowa, 496, 85 N. W., 802;
 
 Lowenstem & Bros.
 
 v.
 
 Glass,
 
 48 La. Ann., 1422, 20 South., 890;
 
 Bohanan
 
 v.
 
 Pope,
 
 42 Me., 93;
 
 Thomas
 
 v.
 
 Watt,
 
 104 Mich., 201, 62 N. W., 345;
 
 Conrow
 
 v.
 
 Little,
 
 115 N. Y., 387, 22 N. E., 346, 5 L. R. A., 693;
 
 Clausen
 
 v.
 
 Head,
 
 110 Wis., 405, 85 N. W., 1028, 84 Am. St. Rep., 933.
 

 .In some jurisdictions it is held that the commencing of an action to enforce one of two or more remedial rights arising out of the same facts, in the absence of mistake or some other legal excuse, in a court having jurisdiction to entertain such proceeding, is such a decisive act as constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights. It is held in other jurisdictions that the mere commencement of a proceeding is not such a conclusive election as will prevent plaintiff from obtaining a dismissal thereof and from instituting another proceeding to enforce an inconsistent remedial right.
 

 Assuming that two or more remedies by action
 
 *471
 
 are inconsistent, the question is as to the effect, as a conclusive election, of merely bringing suit or of proceeding under an action to any point short of obtaining judgment; that is, how far must an action be carried in order to amount to an election?
 

 The cases in Ohio do not seem entirely harmonious on the subject.
 

 In
 
 Buell
 
 v.
 
 Cross,
 
 4 Ohio, 327, 330, this statement is made:
 

 “A person having an option of law or equity, after selecting one tribunal, cannot resort to the other. 1 Ohio Rep., 435, 2 Ohio Rep., 268. 3 Johns. Chy. 356.”
 

 It seems that a judgment creditor had his choice of bringing a suit in equity against an administrator or reviving a judgment by
 
 scire facias,
 
 the conclusion being that the creditor, having seen fit to revive his judgment by
 
 scire facias,
 
 was precluded from pursuing an independent action in equity.
 

 In
 
 Clinton Bank of Columbus
 
 v.
 
 Hart,
 
 5 Ohio St., 34, there was an action on a joint and several obligation, and it was held that the payee had an election to sue jointly or severally and that nothing short of a judgment on the merits could be pleaded in bar to another action on the other form, but that both remedies could not be pursued at the same time.
 

 In
 
 Becker
 
 v.
 
 Walworth,
 
 45 Ohio St., 169, 176, 12 N. E., 1, 4, there was an action to recover rent from an executor personally, and the defense was made that the landlord had collected rent from the defendant in his capacity as executor only, and, therefore, had elected to hold the defendant as such executor and not personally. The petition as
 
 *472
 
 originally filed was against Becker, as executor, but before answer, and on leave, the petition was amended so as to charge him personally, this being done before answer and issue tendered. The court in its opinion says:
 

 “That until prosecuted to final judgment, the claim made against the executor as such would not stand in the way of a claim against him personally.”
 

 It would, therefore, seem that in that case the question as to whether final judgment was necessary to constitute an election was not raised, as the amendment was made before answer and issue made, and before any detriment or loss occurred to the defendant.
 

 By later cases in Ohio it may be inferred that the selection of a remedy, even though it does not proceed to final judgment, is sufficient to constitute an election of remedy that will bar subsequent action upon any other remedy.
 

 In
 
 Zutterling
 
 v.
 
 Drake,
 
 10 Ohio Cir. Ct. R. (N. S.) 167, it was held that “an election between remedies can be made but once, and where a plaintiff has chosen to ask for specific performance he can not subsequently maintain a suit for damages.”
 

 This case was affirmed in this court without opinion in
 
 Drake
 
 v.
 
 Zutterling,
 
 82 Ohio St., 410, 92 N. E., 1113, upon the concurrence of three judges. (The court at that time consisting of six members only.) Whether or not the remaining judges took part in the case, or for wha.t reason they did not give their views, does not appear.
 

 The question was again before this court in the
 
 *473
 
 case of
 
 Mignery
 
 v.
 
 Olmstead, Adm’r,
 
 91 Ohio St., 416, 417, 110 N. E., 1063, and it would seem by that decision that the court regarded the election as made upon the filing of a petition seeking a recovery on one of two inconsistent remedies. It was held that “plaintiff in error having selected his remedy when he prepared and presented his claim against the estate of James Mignery, deceased, he could not maintain an action upon the instrument in question for the land.”
 

 That case arose on the following state of facts: An action was begun in the probate court by the administrator of the estate of James Mignery, deceased, to sell real estate to pay debts. The heirs being made parties, a son, Ernest P. Mignery, filed an answer and cross-petition, wherein he set up what purported to be a written promise by his deceased father, together with his mother, by the terms of which he was to secure at $90 per acre a farm upon which he then lived. It further appeared that said Ernest Mignery, prior to filing his cross-petition for specific performance of the alleged agreement, had filed a claim against the estate of his father for services and money advanced. It was the conclusion of this court that, having elected to present his claim as upon an account and have it allowed, he could not also pursue his alleged claim for specific performance as to the land in question.
 

 The case of
 
 Lee
 
 v. Thoma, 1 Ohio App., 384, affirmed by this court in 91 Ohio St., 444, 110 N. E., 1062, is to the effect that an action for specific performance is a bar to subsequent action for damages alleged to have been sustained through
 
 *474
 
 the failure of the defendant to carry out the contract which formed the basis of the first suit. Cases arising under statutory provisions, such as the Workmen’s Compensation Act, Section 1465-76, General Code, providing that one electing to proceed under the Industrial Commission Act is barred from maintaining suit at law, do not apply. Such cases do not apply for' the reason that they arise under purely statutory provisions.
 
 Conrad, Adm’x.,
 
 v.
 
 Youghiogheny & Ohio Coal Co.,
 
 107 Ohio St., 387, 140 N. E., 482, and
 
 Carnegie Steel Co.
 
 v.
 
 Zebich,
 
 108 Ohio St., 449, 141 N. E., 367.
 

 It might seem that the conclusions of this court, as found in the last three cases
 
 (Drake
 
 v.
 
 Zutterling, supra, Lee
 
 v.
 
 Thoma, supra,
 
 and
 
 Mignery
 
 v.
 
 Olmstead, supra),
 
 indicate that the election of a remedial right, as evidenced by the mere filing of a petition, would constitute an irrevocable election to pursue an inconsistent remedy. In view of the fact that none of these cases announces a rule of law by syllabus, we are constrained to the conclusion that if any such construction of the doctrine of election of remedial rights is placed thereon the same should yield to the broader and more-just doctrine that in order that an election of one remedial right shall be a bar to the pursuit of another, or other remedial rights, the same must be inconsistent and the election made with knowledge and intention and purpose to. elect, and that there must be an actual election in fact made; that the mere bringing of a suit is not determinative of that right, but the party against making the election must have received some benefit under his
 
 *475
 
 election, or have caused detriment or loss to the other party, or pursued his remedy to final judgment. This we believe to be more in accord with the principles announced by Judge Spear in
 
 Becker
 
 v. Walworth,
 
 supra.
 

 In the annotated case of
 
 Register
 
 v.
 
 Carmichael
 
 (169 Ala., 588, 53 South., 799), found in 34 L. R. A. (N. S.), 309, the editor of the note makes this observation:
 

 “That ‘an election, to be conclusive, must be efficacious to some extent at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received, some benefit under his election,’ or have caused some detriment to the other party.”
 

 The rule is well stated by Judge Spear in
 
 Becker
 
 v.
 
 Walworth, supra,
 
 at page 176 (12 N. E., 1, 4):
 

 “It is not necessary to undertake to lay down any general mile, as to election, by which all cases should be governed. Indeed it is apparent that no general rule can be given, but that every case must be left to be decided upon its own particular circumstances.”
 

 However, the record in the instant case does not present the precise question as to whether the mere filing of a petition electing a remedial right was an irrevocable bar, because in this case the parties went further.
 

 Upon the filing of the action at law in Seneca county, February 24, 1922, an injunction was obtained which restrained the Morgans from incumbering or disposing of their property, and
 
 *476
 
 while the same was 'dissolved on the 17th of June following, yet between those dates their exercise of the right of control and ownership over their property was denied them. It is thus apparent that the Nyes inflicted some loss and detriment upon the Morgans, and in this action, in which the injunction was obtained, answers had been filed and issues joined. To deprive one of the free control of his property and the right to alien or incumber the same is to deprive him of a substantial right.
 

 The General Oode recognizes this principle by requiring the giving of a bond before an injunction shall issue. Nor is it sufficient to say that one against whom an injunction is issued, and whose property rights are affected thereby, may recover upon the injunction bond, thus making himself whole. Such procedure may require the employment of counsel and entail other expenses incident to trial. All of this causes detriment to the party affected thereby.
 

 The Nyes might have reviewed this action of the common pleas court of Seneca county, but instead of so doing they waited from June until the last of August, and, then, abandoning the law case, began the action in equity in Hancock county. Clearly as to the Morgans the filing of the law action was an irrevocable election on the part of the Nyes to pursue that remedy, and the Court of Appeals was right in sustaining the motion for judgment on the pleadings as to them.
 

 The question then remains whether the election was made against Frederiekson, who acquired the
 
 *477
 
 property from El-bin P. Morgan in July, after the dissolution of the temporary injunction. It is not claimed that he (Frederickson) had any part in the transaction in the beginning, but that he took the property with knowledge of what the Morgans had done theretofore; in other words, the misdeeds of the Morgans against the Nyes formed the basis of the action in equity against Frederick-son. He was Morgan’s grantee in the deed and took the property, it is claimed, with knowledge of what Morgan had done fraudulently in securing said property.
 

 As to the fraud committed by Frederickson, the journal entry of the Court of Appeals in that respect shows as follows:
 

 “And being fully advised in the premises the court find the issues and equities in favor of the plaintiffs, and against the defendant, Harry Gk Frederickson.
 

 “That the plaintiffs suffered damages to the extent of $6,000 on account of the fraud alleged in the petition which should be charged as an equitable lien upon the property described in the petition under the facts alleged in the petition and amendment thereto which the court also find to be true as therein alleged.”
 

 Upon what portion of the record this finding of the truth of the allegations of fraud as against Frederickson is based we do not discover, unless it be the fact that Frederickson gave his brother-in-law, Elbin P. Morgan, a note for $5,000 and $1,000 in Liberty bonds in payment for the Find-lay property, upon which there was already a
 
 *478
 
 mortgage amounting to over $18,000. Summed up, these facts would amount to about this: That Frederickson was the brother-in-law of Morgan; that Morgan had a lawsuit concerning this Findlay property, a fact which Frederickson probably knew. This would seem to be the basis of the finding of the Court of Appeals, that Frederickson’s part of the fraud was to prevent the Nyes from working out on the property their claims against the Morgans. Frederickson had no part in the wrongs complained of until after they were completed, and he comes into the case entirely after the election of remedial rights was made, and after the dissolution of the injunction.
 

 Does he stand in any different relation than Morgan would himself? We think not. The law action could have been pursued against Frederick-son by making him a party, charging against him the same things that are charged in the equity action. Whatever wrong or fraud Frederickson is answerable for in this action he must have acquired by reason of becoming Morgan’s successor in title to the real estate in question. If the election as against Morgan is good, it must follow that one who stands in Morgan’s shoes cannot be charged with any greater wrong than Morgan. If Frederickson is to be held, then Morgan should be held also. The election of the remedial right had been made by the Nyes, and they are bound thereby.
 

 In
 
 Terry
 
 v.
 
 Munger,
 
 121 N. Y., 161, 168, 24 N. E., 272, 273 (8 L. R. A., 216, 18 Am. St. Rep., 803), Peckham, J., says:
 

 “But it is urged that this election of the plaintiffs
 
 *479
 
 is not binding upon them in favor of the defendant herein, because it was only against the defendants in the other action that they made their election. It is said there is no case to be found where an election ha,s been treated as binding in favor of a stranger to the transaction, and that the defendant herein is such stranger so far as the plaintiffs’ transaction with the defendants in the other action is concerned.
 

 “I do not think this claim can be maintained. In the first place, what is the nature of the plaintiffs’ act in electing to consider the transaction as a sale? It is a decision or determination upon their part to in effect ratify and proclaim the lawfulness of the act of taking the property, and it is an assertion on the plaintiffs’ part that in so doing the plaintiffs’ interest in the. property was purchased, and that thereby their whole title was transferred and they ceased ■ to own any part of the property, and that those who took it impliedly promised the plaintiffs to pay them the value of their interest in such property. This being so, why does not such transfer of title bind the plaintiffs as to the whole world? Surely, the title which plaintiffs once had in the property cannot at the same time rest with them and pass to those who took it. If the title'really once passed, that would be a fact actually existing, which anybody ought to have the right to prove if it became material in protecting his own rights, unless there were some equitable considerations in such case which should prevent it. I cannot see that any exist here. With full knowledge of all the facts, the plaintiffs deliberately elected to treat the transaction, in which this
 
 *480
 
 defendant’s share was well known, as a sale of the property, and now they propose to recover from this defendant damages for the conversion by him of the very same property which they have already said they sold by virtue of the very transaction which they now claim amounted to a conversion of the property by this defendant. Why should the defendant not be permitted to set up such sale as a complete defense to this action? The plaintiffs have done nothing by reason of defendant’s acts which should estop him from setting up this defense. Their situation has not since been altered for the worse by anything the defendant has done. If not, then the fact that the plaintiffs sold the property, by virtue of the transaction which they now seek to treat as a conversion of it by this defendant, must and ought to operate as a perfect bar to the maintenance of this action. And this is not in the least upon the principle of equitable estoppel. It is upon the principle that the plaintiffs, by their own free choice, decided to sell the property, and, having done so, it necessarily follows that .they have no cause of action against defendant for an alleged conversion of the same property by the same acts which they had already treated as amounting to a sale.” Citing
 
 Conrow
 
 v.
 
 Little,
 
 115 N. Y., 387, 22 N. E., 346, 5 L. R. A., 693;
 
 Fowler, Ex’r.,
 
 v.
 
 Bowery Savings Bank,
 
 113 N. Y., 450, 21 N. E., 172, 4 L. R. A., 145, 10 Am. St. Rep., 479;
 
 Bank of Beloit
 
 v.
 
 Beale,
 
 34 N. Y., 473.
 

 We are, therefore, constrained to the conclusion that the Court of Appeals should have rendered the same decree that was made by the court of common pleas, and this matter coming into court
 
 *481
 
 upon error to the Court of Appeals, where it was heard upon appeal, we reverse the judgment of the Court of Appeals and render the judgment whieh it should have rendered, to wit, final judgment in favor of the plaintiff in error.
 

 Judgment reversed.
 

 Marshall, O. J., Robinson and Matthias, JJ., concur.
 

 Wanamaker, J., not participating.