In re J. A. M. A. REALTY CORPORATION.

WILLCOX v. GOESS.

No. 352.

Circuit Court of Appeals, Second Circuit.
July 19, 1937.

4

Conboy, Hewitt, O'Brien & Boardman, of New York City (Bernard Sobol, of New York City, of counsel), for receiver.

Morris Ehrlich, of New York City, for trustee in bankruptcy.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

J. A. M. A. Realty Corporation (hereafter referred to as Jama) was a family corporation whose stockholders were Joseph W. Harriman, his wife and their daughter. It was adjudicated bankrupt upon an involuntary petition filed January 11, 1934, and its trustee in bankruptcy thereafter initiated proceedings which resulted in the order brought to this court by cross-appeals. The questions they present relate to the validity of a chattel mortgage, dated July 1, 1932, from Jama to Marie T. Dixon, and the provability of the debt which the chattel mortgage was given to secure. Under circumstances to be stated later, Mrs. Dixon assigned said mortgage and her claim against the bankrupt estate to Frederick V. Goess, receiver of Harriman National Bank & Trust Company of the City of New York, hereafter referred to as the Bank.

On July 1, 1932, Mrs. Dixon and Jama had accounts as depositors in the Bank. Harriman, who was president both of the Bank and of Jama, held a power of attorney from Mrs. Dixon, who was a resident of Paris, France. It authorized him on her behalf "to buy, sell and otherwise deal in stocks, bonds, securities and other commodities, bought, sold or otherwise dealt in, in any of the Exchanges, or sold over the counter," and to that end to sign, execute and deliver such instruments as might be necessary to effectuate such purchases and sales. A copy of the power of attorney was filed with the Bank. It may be assumed that the power of attorney authorized him to draw checks against her account in the Bank for certain purposes; but it did not authorize him to do so for the purpose of loaning money on her behalf to Jama. Nevertheless, on July 1, 1932, Harriman, purporting to act as her agent, drew a check on her account for $75,000 to the order of Jama, deposited it in the latter's account, and executed a note on behalf of Jama for a like sum payable to Mrs. Dixon 90 days after date with interest at 5 per cent. per annum. The note recited that it was secured by a deposit of listed collateral. The Bank charged the check against Mrs. Dixon's account and credited it to Jama's. The sum so credited was immediately withdrawn as a loan to Harriman. On Jama's books of account were entered the loan from Mrs. Dixon and the loan to Harriman. The note payable to Mrs. Dixon, and a renewal note, were retained in the custody of Evan W. Hughes, who was Mr. Harriman's confidential secretary and the bookkeeper for Jama. On September 2, 1932, Harriman executed on behalf of Jama a chattel mortgage to

Mrs. Dixon (dated back to July 1, 1932) covering the collateral enumerated in the aforesaid note, and caused it to be filed in the Register's office of New York County. No meeting of stockholders ever authorized or ratified the execution of the mortgage. Harriman owned less than half the stock of Jama but it was stipulated that he was in sole charge of its affairs and was the only person who ever made decisions concerning the conduct of its business. It was also stipulated that on September 2, 1932, Jama was insolvent. On September 1, 1933, Mrs. Dixon's attorneys, acting on her behalf, caused the mortgage to be refiled pursuant to statute, with a statement that there was due thereunder the sum of $75,000 with interest from October 1, 1932. Interest for the first three months of the alleged loan had been paid to Mrs. Dixon on September 29, 1932, by Jama's check for $937.50 deposited in and credited to her account in the Bank.

Just when Mrs. Dixon first learned of the loan Harriman had assumed to make on her behalf does not appear. At the end of each month the Bank sent her a monthly statement of account, together with the cancelled checks. A letter dated October 28, 1932, from Mrs. Dixon to Harriman refers to the loan, but indicates she had not complete information, as she speaks of it as a six months' loan and says nothing of the chattel mortgage. In December, 1932, attorneys for Mrs. Dixon investigated the matter and brought suit for her against the Bank for $75,000, alleged to be the balance of her deposit. The Bank pleaded, in addition to the general issue, defenses of payment, ratification, and account stated. While this suit was pending, Mrs. Dixon filed against the bankruptcy estate a proof of claim, verified May 31, 1934, based on "a loan of $75,000" to the bankrupt corporation "tortiously" made by Harriman "as agent" for her. This was filed pursuant to a stipulation in Mrs. Dixon's suit against the Bank that prosecuting any remedy against Jama should be without prejudice to the rights of either party. In January, 1936, Mrs. Dixon discontinued her suit against the Bank and assigned to its receiver her claim against the bankrupt and the said chattel mortgage in consideration of the receiver accepting her claim against the Bank as a general creditor in the sum of $45,000. Prior thereto the chattels covered by the mortgage were sold by the trustee in bankruptcy and the net proceeds of the sale, amounting to $10,151.78, are still in the hands of the trustee. On February 21, 1935, the trustee in bankruptcy sued the Bank's receiver to recover on a series of checks drawn by Jama to the order of Harriman, and in this litigation the trustee took the position that Jama was indebted to Mrs. Dixon on account of her alleged loan to it of $75,000. In the present proceeding the trustee's position is that she has lost her claim against the bankrupt by having elected to sue the Bank and having settled the suit by accepting a claim as a general creditor in the sum of $45,000.

In the District Court it was held that the chattel mortgage was invalid because (1) it was not executed in conformity with section 16 of the Stock Corporation Law of New York (Consol.Laws, c. 59), and (2) it constituted a voidable preference under section 15 of said act. The correctness of these rulings are raised by the receiver's appeal. The District Court also held that the receiver, as assignee of Mrs. Dixon, was entitled to have her claim against the bankrupt estate allowed in the principal amount of $75,000. The correctness of this ruling is raised by the trustee's appeal.

Section 16 of the New York Stock Corporation Law provides that consent to the execution of a corporate mortgage must be "by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon, given either in writing, or by vote at a meeting of the stockholders called for that purpose." This court recently held that the actual consent of stockholders owning two-thirds of the outstanding stock, although not given in writing or by formal vote, was a sufficient compliance with the statute. In re Victoria Fusilli Co. (C.C.A.) 79 F.(2d) 611. There the stock of the corporate officer who executed the mortgage and the stock of the individual named therein as mortgagee aggregated more than two-thirds of the outstanding stock, and the actual knowledge and consent of these two stockholders were evidenced by the delivery and acceptance of the mortgage. Although Harriman, the corporate officer who executed the mortgage here involved, owned less than half of the stock, it is urged that the principle of the Fusilli Case applies because of the concession at the trial that he was in sole charge of the corporate affairs and made all decisions regarding them. To accept this contention would certainly require a step be-

yond our prior decision. It is a step we cannot take. The purpose of section 16 is to prevent the officers of a corporation from mortgaging its assets without the knowledge and consent of two-thirds of the shareholders. This purpose is satisfied if the requisite number have actual knowledge and evidence their consent by the execution and acceptance of the mortgage document. It is not satisfied merely by proof that the president dominates the corporation and the other stockholders are accustomed to leave all corporate decisions to him. There is no evidence that the other stockholders ever had actual knowledge of the execution of the mortgage in suit. In the absence of compelling state decisions, we are unwilling to construe the statute as sanctioning a consent based only on general acquiescence in whatever the dominating officer may do. Accordingly the mortgage was properly held invalid under section 16. It is unnecessary to determine whether it would otherwise have been voidable as a preference under section 15 on the theory that Jama was insolvent and that Harriman's knowledge of Jama's insolvency was imputable to Mrs. Dixon. As to the receiver's appeal the order must be affirmed.

The appeal of the trustee in bankruptcy raises more troublesome questions. His first contention is that Jama is not liable because it never got any benefit from Mrs. Dixon's money, which was immediately withdrawn from the corporation's account and expended by Harriman personally. The argument is that he was using the corporation merely as a conduit by means of which to commit a fraud on Mrs. Dixon for his own benefit and, therefore, cannot be deemed the company's agent to borrow money from her. Credit Alliance Corp. v. Sheridan Theatre Co., 241 N.Y. 216, 220, 149 N.E. 837. The receiver replies that this question is not open, since it was not urged below and is not specifically covered by the trustee's assignments of error. But passing this technical objection, we think the trustee's contention cannot be sustained. In the case above cited the president of the defendant corporation had no authority to borrow on behalf of the corporation without the concurrence of the treasurer, whose signature to the defendant's note he forged. The lender had to sue for money received to the corporation's use, and the fact that the defendant obtained no benefit, since the money was immediately withdrawn by the wrong-

doer, defeated the action. Here, however, Harriman, in sole charge of Jama's affairs, was authorized to borrow on its behalf. Its note made payable to Mrs. Dixon could not have been defeated by proof that the corporate agent had made away with the money. She would not be chargeable with Harriman's knowledge that the note was given in an attempt to perpetrate a fraud for his own benefit. See Thomson-Houston Electric Co. v. Capitol Electric Co., 65 F. 341, 343 (C.C.A.6); Am. L. Inst. Agency, § 280.

The trustee next contends that Mrs. Dixon's action against the Bank, followed by its settlement by the receiver, was an election of remedies which bars her, and the receiver as her assignee, from asserting any claim against the bankrupt. The receiver answers that the doctrine is inapplicable under modern authorities unless there are two inconsistent remedies; and that the fruitless prosecution of a supposed, but non-existent, remedy does not constitute an irrevocable election. Schenck v. State Line Tel. Co., 238 N.Y. 308, 311, 144 N.E. 592, 35 A.L.R. 1149; Henderson Tire & Rubber Co. v. Gregory, 16 F.(2d) 589, 593, 49 A.L.R. 1503 (C.C.A.8), and authorities there cited. It is urged that Mrs. Dixon had no valid remedy against the Bank at the time she brought suit, because she had previously ratified Harriman's act in drawing a check upon her account by failing to repudiate it after receipt of the monthly statements mailed to her by the Bank, which disclosed that her account had been debited with the $75,-000 check in July and credited with the item of interest paid by Jama in September. The referee in bankruptcy, whose report was confirmed by the District Court, so held. Ratification by a principal of an unauthorized act of an agent presupposes full knowledge of the material facts involved in the transaction. Am. L. Inst. Agency, § 91. Mrs. Dixon's letter of October 28, 1932, showed that she then knew of the loan to Jama, and requested Harriman to transfer it to Morgan & Co. for her account; but there is no evidence that she knew Jama was a creature of Harriman's, or even that the investment of her funds in this loan was beyond the authority conferred upon him by her power of attorney, unless, without proof, she can be charged with knowledge that the loan was not such a security as he was authorized to buy for her—namely, securities "dealt in in any of the Exchanges, or sold over the counter." Apparently she did not

have full knowledge of the investment prior to her attorney's investigation in December, 1932. Following this, she promptly started suit against the Bank, in which the issue of ratification was raised by the Bank's answer. There can be no assurance how that issue would have been decided had the suit gone to trial. Indeed, the receiver himself must have considered the defense of dubious validity, since he settled the suit by allowing Mrs. Dixon's claim as a creditor of the Bank for the amount of $45,000. Therefore, it may well be doubted whether the evidence in the present record is sufficient to prove that the Bank had a valid defense of ratification to Mrs. Dixon's claim; but we need not decide it. Let it be assumed that the defense was valid, nevertheless, the suit was not fruitless; it was prosecuted to a settlement. The question then arises whether a plaintiff who has prosecuted to settlement an alleged, but legally nonexistent, cause of action against one defendant, can thereafter maintain a suit against another on an inconsistent cause of action. No precise authority has been found. However, prosecuting to judgment an action against one has often been held an election which bars an inconsistent action against another. Fowler v. Bowery Savings Bank, 113 N.Y. 450, 454, 21 N.E. 172, 4 L.R.A. 145, 10 Am.St.Rep. 479; Terry v. Munger, 121 N.Y. 161, 24 N.E. 272, 8 L.R.A. 216, 18 Am.St.Rep. 803; Nat. Surety Co. v. Perth Amboy Trust Co., 76 F.(2d) 87 (C.C. A.3). Likewise, obtaining a cash settlement of a suit against A was held to bar suit against B. Minneapolis Nat. Bank v. Liberty Nat. Bank, 72 F.(2d) 434 (C.C.A. 10). See, also, Ins. Co. of North America v. Fourth Nat. Bank, 28 F.(2d) 933 (C.C.A. 5); 10 R.C.L. 703. In H. G. Vogel Co. v. Original Cabinet Corp., 252 Mich. 129, 233 N.W. 200, the allowance of a claim in a receivership and the acceptance of dividends thereon were treated as equivalent to judgment and collection under execution, and were held to bar the claimant from maintaining an inconsistent suit against the purchaser of property sold by the receiver. The principles of these decisions are applicable to the case at bar. It is difficult to find any distinction between a settlement which allowed Mrs. Dixon a claim as a general creditor of the Bank (though in a sum less than that claimed) and a court judgment with partial satisfaction. She could have a claim as a depositor only on the theory that Harriman was not her agent in drawing the $75,000 check which the Bank honor-

ed. Having maintained this position against the Bank so successfully as to obtain a substantial sum (conceded in the briefs to be 76 per cent dividends on the conceded claim of $45,000), she now takes the wholly inconsistent position of asserting against the bankrupt that Harriman was her agent in withdrawing the $75,000 from the Bank.

In City of New York v. Bronx County Trust Co., 261 N.Y. 64, 74, 184 N.E. 495, it is said that election of remedies is a defense only when a choice is exercised between remedies which proceed upon irreconcilable claims of right, and has no application to the pursuit of persons concurrently liable, short of payment and satisfaction. The receiver urges that Mrs. Dixon's suit against the Bank and her claim against the bankrupt do not proceed upon irreconcilable claims of right. They clearly do. Her claim against the Bank is in contract for the balance of her deposit, and, as already explained, presupposes that her account was improperly charged with a check not drawn by her agent. Her claim against Jama for money loaned presupposes that Harriman was her agent in withdrawing money from her account; otherwise it was the Bank's money, not hers, which Jama received. The two claims are mutually exclusive; either may exist but not both together. They are alternative substantive rights between which Mrs. Dixon might choose when she learned that Harriman had acted beyond his authority as her agent. If she elected to ratify his act, she would have a contract with Jama but none with the Bank; conversely, if she elected to disaffirm his act, she would have a contract with the Bank but none with Jama. Often what is referred to as an election of remedies is in reality, as here, a choice between alternative substantive rights. See Brandeis, J., in United States v. Oregon Lumber Co., 260 U.S. 290, 307, 43 S.Ct. 100, 67 L.Ed. 261; Schenck v. State Line Tel. Co., 238 N.Y. 308, 312, 144 N.E. 592, 35 A.L.R. 1149; Frederickson v. Nye, 110 Ohio St. 459, 144 N.E. 299, 35 A.L.R. 1163; annotations in 35 A.L.R. 1153, and 35 A.L.R. 1175. By suing the Bank, Mrs. Dixon evidenced her election to disaffirm Harriman's act; later by filing her claim in bankruptcy she evidenced an intention to affirm and ratify his act. Whether it was then too late to ratify we need not say. Cf. Am. L. Inst. Agency, § 92(b). Even if there be a locus pœnitentiæ after disaffirmance, a time must come when pursuance of the right based on disaffirmance

8

causes the alternative right based on affirmance to be irrevocably lost. Having insisted upon her right against the Bank to the point of collecting a substantial sum, we think she irrevocably elected it and lost the alternative right against Jama.

Finally, the receiver urges that the trustee in bankruptcy is estopped as against the receiver to deny the validity of Mrs. Dixon's claim because he asserted the liability to her as one of the bankrupt's liabilities in establishing its insolvency in Wilcox v. Goess (D.C.) 16 F.Supp. 350, 370. We see no basis for estoppel in this. Apparently the trial of the Wilcox Case was subsequent to the receiver's settlement of Mrs. Dixon's suit against the Bank. Nor has any authority been cited to the effect that a trustee in bankruptcy may estop himself from setting up valid defenses to a proof of claim. Ott v. Thurston, 76 F.(2d) 368 (C.C.A.9), implies the contrary.

In our opinion, Mrs. Dixon's suit against the Bank pursued to settlement was an election of remedies which precludes allowance of her proof of claim against the bankrupt. The trustee's motion to expunge the claim should have been granted. In this respect the order is modified, and so modified is affirmed.