BERRY et al., Appellants,

v.

JAVITCH, BLOCK & RATHBONE, L.L.P., Appellee.

[Cite as *Berry v. Javitch, Block & Rathbone, L.L.P.,*
182 Ohio App.3d 795, 2009-Ohio-3067.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91723.

Decided June 25, 2009.

Landskroner, Grieco, Madden, Ltd., and Paul Grieco; Morganstern, MacAdams & DeVito, and Christopher M. DeVito, for appellants.

Synenberg & Associates, L.L.C., and Roger M. Synenberg, for appellee.

MARY EILEEN KILBANE, Judge.

{¶ 1} Plaintiffs-appellants, Robert and Diane Berry ("the Berrys"), appeal the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Javitch, Block & Rathbone, L.L.P. ("Javitch"). After a thorough review of the record and pertinent law, we conclude there is an issue of material fact. Therefore, we reverse.

{¶ 2} The Berrys commenced an action for fraudulent and gross negligent misrepresentation, as well as fraudulent and gross negligent concealment against Javitch. In an earlier suit, the Berrys alleged that Javitch committed fraud when it failed to disclose the fact that it was insured for legal malpractice by Clarendon National Insurance Company ("Clarendon") from October 1998 through October

1999. In June 2000, the Berrys filed a legal malpractice action against Javitch. In an interrogatory, Javitch disclosed only its policy with Legion Insurance Company ("Legion"), which did not cover the time period when the Berrys' claim occurred. Javitch contacted Clarendon in October 2001, but did not list this insurance policy in its discovery responses.

{¶ 3} The Berrys and Javitch entered into a settlement agreement wherein Javitch consented to judgment in the amount of $195,000, $65,000 of which was to be paid by Javitch up front. Following the execution of the agreement, Javitch, through its attorney, was to attempt to persuade Legion to satisfy the judgment. After 90 days, if Javitch was not successful, the Berrys were permitted to attempt to collect the balance from Legion. In the agreement, both parties acknowledged that Legion was denying coverage. Further, the Berrys agreed that under no circumstances would Javitch pay the Berrys more than $65,000. The Berrys were bound to release any and all claims when one of two conditions occurred: (1) Legion satisfied the consent judgment or (2) the claim against Legion for that consent judgment was otherwise resolved. The agreement was executed on December 21, 2001. Javitch was unable to persuade Legion to pay the balance of the judgment, and the consent decree was executed and filed on April 1, 2002.

{¶ 4} Javitch pursued litigation against Legion that was ultimately dismissed on summary judgment in favor of Legion. The Berrys were also unsuccessful in pursuing Legion.

{¶ 5} In September 2006, the Berrys filed suit again, claiming that they were fraudulently induced into settling the malpractice case, arguing that they would not have settled for $195,000 had they known that Javitch had been insured by Clarendon.

{¶ 6} Javitch filed a motion for summary judgment, which was granted without opinion. This appeal followed. The Berrys assert one assignment of error for our review, which states the following:

> The trial court erred as a matter of law when it granted Javitch Block's motion for summary judgment because the evidence before it established that the Berrys had viable claims for fraudulent conduct.

{¶ 7} This court reviews a trial court's grant of summary judgment de novo. *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving

party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.,* 99 Ohio St.3d 299, 2003-Ohio-3652, 791 N.E.2d 456, ¶ 6, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 8} The Berrys argue that Civ.R. 60(B)(3) is inapplicable because they did not seek to rescind the settlement agreement but rather sought damages for fraud. Javitch contends that the Berrys failed to timely allege fraud, pursuant to the one-year statute of limitations set forth in Civ.R. 60(B)(3). The Berrys may choose to bring a separate action for fraud without moving for relief from the consent-judgment entry. The Berrys first learned of the Clarendon policy in July 2004, and filed suit in September 2006, well within the four-year statute of limitations for fraud.

{¶ 9} In *Frederickson v. Nye* (1924), 110 Ohio St. 459, 468–469, 144 N.E. 299, the Ohio Supreme Court stated:

> "The law is elementary that where one has suffered by reason of the misrepresentation of another, and has been led to part with his money in reliance upon said false and fraudulent misrepresentation, he has three independent remedies: First, he may affirm the contract into which he had been induced to enter and sue for his damages for the fraud perpetrated upon him. Second, he may rescind the contract itself and bring action to recover back the moneys which he has paid. Third, he may bring an action in the nature of the action at bar in a court of equity to obtain a rescission of the contract into which he had been induced to enter, with incidental relief. An action for rescission is entirely independent and inconsistent with an action for damages by reason of the false and fraudulent representations. In the first action the contract is treated as a nullity and the plaintiff asks the intervention of a court of equity to obtain a nullification of said contract. In the action for damages for fraudulent representations which induced him to enter into the contract, he affirms the contract and brings his action to recover damages by reason of such false representations. In the one action he treats the contract as nonexistent, and in the other action he affirms the contract. Each remedy is inconsistent with the other."

Id., quoting *Clark v. Kirby* (1923), 204 A.D. 447, 451, 198 N.Y.S. 172. See also *Colvenbach v. McLaughlin* (June 18, 1982), Ashtabula App. No. 1082.

{¶ 10} We agree with the appellants that Civ.R. 60(B)(3) does not apply in this case because the appellants were not looking to rescind the settlement agreement but rather were suing for damages caused by Javitch's alleged fraud. Therefore, the limitation in Civ.R. 60(B) requiring relief to be sought within one year is inapplicable.

■ {¶ 11} Javitch has argued that the settlement agreement executed by the parties in 2001 contained a release absolving them from future litigation. However, the specific language of the settlement agreement reads,

> Plaintiffs will not release Javitch Block with respect to the amount of the consent judgment, until such time as that judgment is satisfied by Legion Insurance Company or the claim against Legion Insurance Company for that judgment is otherwise resolved. The release will include, inter alia, an acknowledgment that the settlement constitutes a resolution of disputed claims.

{¶ 12} Based on this language, the Berrys did not release Javitch from future claims. It is clear that the parties contemplated executing a release in the future when the judgment had been satisfied. Further, in 2007, a letter from Javitch's counsel sent to counsel for the Berrys specifically mentions Javitch's desire to obtain a release from the Berrys.

{¶ 13} Finding no merit to Javitch's contention regarding the release, we must now consider whether the trial court's granting of summary judgment was appropriate. The Berrys argue that summary judgment should not have been granted because there is a material issue of fact as to their fraud claims. Although the Berrys also alleged negligent misrepresentation and concealment in their complaint, they have not addressed either in this appeal. Consequently, we will only address their fraud claims.

■ {¶ 14} To establish a claim of fraudulent misrepresentation and/or concealment the following elements must be proved: (a) a representation or, where there is a duty to disclose, the concealment of a fact (b) that is material to the transaction at hand, (c) was made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, and (e) justifiable reliance upon the representation or concealment, (f) with a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101. The failure to prove any one of these elements is fatal to the plaintiff's case. *Conley v. Willis* (June 14, 2001), Scioto App. No. 00CA2746, 2001 WL 714836, at *4. Where the pleadings and evidence submitted clearly fail to support a claim for fraud, summary judgment is properly granted. Id. at *5.

■ {¶ 15} The crux of the Berrys' argument lies in Javitch's response to Interrogatory No. 4 in the legal-malpractice lawsuit that requested "the name of insurer, type of policy/policies, policy number/numbers, and limits of coverage of each and every insurance policy that may cover your alleged liability in this action, including umbrella coverage." Javitch responded, "Legion Insurance Company/Claims made policy 10–12–99 through 10–12–00/Policy No. PL 106–572–

42/Limits: $1 million per claim/$3 million aggregate." After Legion denied coverage, Javitch supplemented its response, explaining that Legion was denying coverage.

{¶ 16} The Berrys insist that Javitch should have disclosed the existence of the Clarendon policy that was in effect at the time their malpractice suit arose. Javitch contends that the Clarendon policy would not cover the situation because it was a "claims made" policy that required notification prior to the policy's expiration, which did not happen in this case. Javitch would have had to notify Clarendon of a possible claim between October 12, 1998, and October 12, 1999.

{¶ 17} On August 26, 1999, before the expiration of the Clarendon policy, Roetzel & Andress contacted Javitch on behalf of the Berrys and stated,

[We] have advised the Berrys that they could prosecute a claim against your firm * * *. We have also advised them that they would have a viable claim to recover the fees and expenses that they have paid your firm to date. We believe these claims would have significant value before a jury, including the potential for the recovery of punitive damages. We respectfully suggest that you put your firm's malpractice insurance carrier on notice.

{¶ 18} Despite receiving this communication on behalf of the Berrys, Javitch did not place Clarendon on notice during the applicable period and later repeatedly insisted that Legion would cover the claim. Upon receipt of the August 26, 1999 letter, Javitch held a meeting specifically to address the Berrys' claims. Joel Rathbone, a partner at Javitch, participated in the meeting. Javitch did not notify Clarendon, and Legion continued to deny coverage, asserting that the claim occurred before the Legion policy was in effect and while Clarendon was still providing coverage.

{¶ 19} The Berrys allege that Javitch's interrogatory responses were knowingly false or incomplete, that the responses were made intentionally to mislead them, and that they relied on the fraudulent responses to their detriment. The Berrys claim that Javitch knew or should have known that Clarendon was their legal-malpractice-insurance carrier during the applicable time period. They contend that they never would have settled if they were aware of the Clarendon policy.

{¶ 20} Javitch argues that because it did not believe that Clarendon would provide coverage, it did not have a duty to disclose the policy in the interrogatory. However, the interrogatory submitted to Javitch sought the names of any coverage which "may" cover the claim. Initially, Javitch disclosed only Legion. When Javitch learned that Legion was denying coverage, Javitch supplemented their response to indicate that Legion was denying coverage.

{¶ 21} Interestingly, on the same day the interrogatory was supplemented, Javitch, through their attorney, sent a letter to Clarendon stating, "We are hereby putting you on notice of a claim which may be covered by your policy because of events occurring during your policy period which allegedly constituted a claim."

{¶ 22} Javitch contended that although the letter was sent, it believed that Clarendon would not cover the claim. This argument is without merit. Javitch is a seasoned law firm. Javitch, through its counsel, would not have sent Clarendon a letter putting it on notice and specifically requesting coverage if it truly believed there was no possibility of coverage as it now argues. Further, when asked to explain a claims-made policy, Joel Rathbone answered, "Claims made policy means that the occurrence of the claim has to occur during the time of the policy." Rathbone did not believe that Clarendon had to be placed on notice during the policy period; rather, he believed that the claim must occur during that time period.

{¶ 23} Javitch's counsel, Gary Hermann, stated that when he sent Clarendon the October 24, 2001 letter, he was uncertain as to whether there would be coverage. He specifically stated, "I hadn't fully investigated the issue yet, and wasn't sure whether there was coverage at that point." Hermann attempted to find a way for the claim to be covered under the Clarendon policy and even assigned an associate to research the issue.

{¶ 24} Javitch argues that merely failing to disclose the Clarendon policy does not amount to concealment. We disagree. "The simple failure to disclose a fact is not equivalent to concealment, for a distinction is made between the concealment of a fact and the failure to disclose a fact, the former implies purpose—design; the latter does not." *Mitchell v. Slocum* (M.C.1981), 7 Ohio Misc.2d 33, 35, 7 OBR 246, 455 N.E.2d 20. Javitch was aware that the Berrys would probably not be able to collect from Legion, as Legion had previously denied the claim. Javitch's attorney contacted Clarendon in October 2001 trying to obtain coverage, while at the same time failing to list Clarendon in response to the Berrys' discovery requests. There is sufficient evidence for the fact-finder to conclude that Javitch purposefully withheld information about the Clarendon policy.

{¶ 25} The Berrys bolstered their claims with an expert report prepared by attorney W. Craig Bashein. After reviewing all pertinent information, Bashein provided a report concluding that Javitch had provided inaccurate responses to discovery and that the Berrys relied on the inaccurate responses when they entered into the settlement agreement.

{¶ 26} There is ample evidence to support that the Berrys justifiably relied on the representations from Javitch that Legion was the only coverage. While the

Berrys realized that Legion may not pay the claim when they settled with Javitch, they were unaware that there was another insurance company they could pursue. If the Berrys had known about Clarendon, they may have declined to enter into the settlement agreement.

{¶ 27} Accordingly, we find a material issue of fact still remains as to whether Javitch purposefully withheld the existence of the Clarendon policy; therefore, we sustain the Berrys' sole assignment of error.

{¶ 28} The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment accordingly.*

JONES, J., concur.

GALLAGHER, J., dissents.

SEAN C. GALLAGHER, Presiding Judge, dissenting.

{¶ 29} I respectfully dissent. I would find that summary judgment was properly granted in favor of Javitch because there is no evidence that Javitch intended to mislead the Berrys or that the Berrys justifiably relied upon Javitch's response to their detriment.

{¶ 30} Although I agree that Javitch's response was less than accurate, the record does not support the Berrys' claim that Javitch made a false statement with knowledge of its falsity. When the Berrys finally filed suit against Javitch, the Clarendon policy had expired. Javitch believed that the Clarendon policy would not cover the cause of action because that policy required notification before the term of the policy expired, which was not done. Javitch believed that the Berrys' cause of action would be covered by the Legion policy. Javitch even pursued Legion to provide coverage for the Berrys' claims. I fail to see how it would benefit Javitch to purposely hide the Clarendon policy.

{¶ 31} Further, an insurance policy is a contract between the insurance company and the insured. *McPhillips v. Travelers Indemn. Co.*, Cuyahoga App. Nos. 91286 and 91561, 2009-Ohio-1262, 2009 WL 713021. Although the Berrys had threatened to file suit before the Clarendon policy expired, Javitch did not notify Clarendon because it did not think the Berrys' allegations were valid or that the Berrys would file suit. Unless required by statute, an insured may elect to handle claims itself or to turn the claims over to its insurance carrier.

{¶ 32} Finally, I do not think that the record supports the Berrys' claim that they *justifiably* relied upon the inaccurate information. When the Berrys settled with Javitch, they were keenly aware that Legion was denying coverage because the claim was outside the policy's time frame. They were well aware that they

might not recover any money from Legion. Nevertheless, the Berrys agreed to accept $65,000 from Javitch without the possibility of recovering the balance from Javitch if Legion continued to deny coverage. This proves that the Berrys were eager to settle for whatever Javitch could provide, regardless of coverage from an insurance carrier. Accordingly, I would find that summary judgment was properly granted against the Berrys.