ADOLPH W. ECKSTEIN *vs.* EDWIN M. CALDWELL.

JUNE 25, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J.    This action in assumpsit was tried before a jury in the superior court and resulted in a verdict for the plaintiff for $462.40, including interest. The defendant moved for a new trial on the usual grounds and on the further ground of newly discovered evidence. This motion was heard and denied by the trial justice, the defendant's exception to this ruling being duly noted. The case is before us on this exception and on certain other exceptions of the defendant to the admission or exclusion of evidence.

The plaintiff, who is now a practicing physician in this city but who, at the time of the transaction involved in this case, was an interne in one of our hospitals, testified in substance that about the beginning of January 1931, he started negotiating with one Edward B. Martin, who sold second-hand automobiles from an open lot in the city of Cranston, for the purchase of a used car; that Martin had a Ford car for $400 cash, which was satisfactory to him; that he then told Martin that he needed a few days to raise the money; that, on January 8, 1931, a friend loaned him this sum, giving him a check payable to his order for that amount; that, when he informed Martin that he was ready to close the transaction, he was told by Martin to meet him at a certain place on Reservoir avenue in the city of Providence, the number of which he did not recall, where he could give Martin the money and take the car.

The plaintiff further testified that on January 9, 1931, he went to the address which Martin had given him and found that it was an automobile salesroom; that he there met Martin, who introduced him to the defendant, Caldwell; that, following some general conversation, he indorsed the $400 check and handed it to Caldwell at Martin's suggestion, the latter writing out and giving him the following receipt: "Jan. 9, 1931. Received from Dr. Adolph W. Eckstein four hundred dollars in Full Payment for one 1930 Ford Coach—$400—Motor number A-3375926—Acme Motor Sales, Cranston, R. I. by Edward Martin"; and that

144

he, the plaintiff, then received the car and drove away. The check above mentioned, which is indorsed by the plaintiff and the defendant but not by Martin, was introduced in evidence.

The evidence shows that within a week or so thereafter, the car, being a stolen car, was taken from the plaintiff by the police. Following an unsuccessful attempt to adjust the matter, the plaintiff sued Martin for the $400 and recovered judgment in that case. When Martin did not pay this judgment, the plaintiff instituted supplementary proceedings against him, and in the course of Martin's examination in these proceedings, the plaintiff, according to his testimony in the instant case, learned for the first time that the defendant was "the real owner of that car and had been the real seller." He thereupon brought this suit against the defendant.

The defendant's testimony in substance is that his principal business was financing automobile dealers, but that he also bought and sold automobiles on his own account; that, while he had financial dealings with Martin, the latter never acted as his agent in buying and selling automobiles; that he bought the car involved in this case on January 5, 1931 from one Ralph De Lulla, and had sold it to Martin; that he was not at his salesroom on January 9, 1931, when the plaintiff testified he was there with Martin; that he had not received the check for $400 from the plaintiff at that time and place, and that the first time he saw the plaintiff was at the original trial of this case in the district court.

Martin, who appeared as a witness for the defendant in the superior court, testified that he alone did business under the name of the Acme Motor Sales; that he carried no bank account, and that he personally owned the car in question. Concerning the final step in the sale of that car to the plaintiff, he testified as follows: "He (referring to the plaintiff) told me he would buy it but he had to wait a few days to get the money on account of being an interne, so I sold him

the automobile and I am pretty sure he gave me a check for the automobile and I give him the bill of sale of the car. That is as much as I know." In direct examination he testified as follows respecting the check for $400: Q. "Now, then, have you seen this check marked 'Plaintiff's Exhibit 1' which bears the endorsement of Mr. Caldwell?" A. "I think I received the check." Q. "And do you recall turning it over to Mr. Caldwell?" A. "What is that?" Q. "Do you recall turning it over to Mr. Caldwell?" A. "Either him or his bookkeeper. I wouldn't recollect right now." Q. "Well, now, were you doing business generally with Mr. Caldwell at that time?" A. "He discounted my paper; that is, discounted my lease and notes."

Ralph De Lulla testified that about January 5, 1931, he sold the car in question to Martin and delivered it to the latter's lot in Cranston, but that he was paid by Caldwell with his check. It appears in evidence that on April 22, 1931, Caldwell obtained judgment against De Lulla for this car. We find nothing in the evidence showing that Martin made any claim or demand on Caldwell or that any adjustment was made between them for the money that was allegedly paid by Martin to Caldwell when Martin claims to have bought the car from him.

The defendant moved for a directed verdict at the close of all the evidence, claiming that there was no competent evidence "showing any existing agency between Martin and Caldwell". This is the ground of his fourth exception. In support of this contention, he argues that because there is testimony that Caldwell sold the car to Martin and that the latter paid for it, the doctrine of undisclosed principal does not apply, as there is "not one scintilla of evidence . . . to disprove that the relation of Caldwell to Martin and Martin to Caldwell in relation to the car in question was anything but that of buyer and seller, vendor and vendee, and that full consideration passed between the parties." If the testimony of the defendant and of Martin were the

only testimony in the case, this argument might carry some force, but that is not the case here. On a motion for a directed verdict by a defendant, the trial justice is bound to consider all the evidence and the reasonable inferences therefrom, and to construe all such evidence and inferences most favorably to the plaintiff. Ordinarily, the question of agency depends to a great extent upon the facts in evidence. In the instant case, the true relation between the defendant and Martin, when the latter claims to have sold the car to the plaintiff, was a question of fact. The testimony on this point was conflicting and reasonably open to different interpretations, depending upon what and whose testimony was believed. The defendant's motion for a directed verdict was properly denied, and his fourth exception is overruled.

The court adjourned for the day immediately after the trial justice made the ruling that we have just considered. When court reconvened the following morning, the defendant renewed his motion for a directed verdict on the ground that, having brought suit and recovered judgment against Martin, the plaintiff had elected his remedy and could not thereafter sue Caldwell, even though Caldwell were an undisclosed principal. Although it is unusual to make a motion for a directed verdict piecemeal, the trial justice, in the exercise of his discretion, entertained the motion and decided it adversely to the defendant. This ruling is the ground of the defendant's fifth exception. We find no error in the decision of the trial justice on this point.

The obtaining of a judgment against one whom a plaintiff believes a principal, but who is only the agent for an undisclosed principal, is no bar to a subsequent suit against the real principal, provided that the plaintiff did not know of the agency at the time of the judgment, that the judgment remained unsatisfied, and that the plaintiff acted with reasonable diligence after discovery of the agency. There can be no election by a plaintiff until he learns that the person whom he believed a principal was really an agent,

and then not until he discovers the principal for whom the agent was acting. The question resolves itself into one of fact to be determined from all the circumstances in evidence. Election presupposes the knowledge of alternatives with an opportunity for choice, and there can be no such opportunity until the real principal is known. *Old Ben Coal Co.* v. *Universal Coal Co.*, 248 Mich. 486; *Pittsburgh Terminal Coal Corp.* v. *Bennett* (C. C. A. Pa.), 73 Fed. (2d) 387; *Mississippi Valley Construction Co.* v. *Abeles & Co.*, 87 Ark. 374; 1 Williston on Contracts (Rev. ed.) § 289.

In the instant case the jury might reasonably find, from their appraisal of the evidence, that Martin was the agent of Caldwell, an undisclosed principal; that the plaintiff did not discover this relation until he had received judgment against Martin, and that, as soon as he made such discovery, he immediately brought suit against Caldwell. The motion for a directed verdict on the ground that the plaintiff had elected his remedy was therefore properly denied. Defendant's fifth exception is overruled.

The defendant, by his sixth exception, contends that the trial justice erred in denying his motion for a new trial on the ground that the verdict is against the law and the evidence and on the further ground of newly discovered evidence. As to the first ground of the plaintiff's motion, we repeat that under our well-established practice the decision of the trial justice will not be disturbed by us unless such decision is clearly wrong or based upon a misconception of the evidence. *Peters* v. *United Electric Rys. Co.*, 57 R. I. 311. The evidence in the instant case was conflicting on several controlling points and its weight depended in no small measure on the credibility of the witnesses. The trial justice had the advantage of seeing and hearing them testify, and he has accepted the evidence that established the plaintiff's case, just as the jury did before him. From our examination of the evidence, we cannot say that the trial

justice was clearly wrong in sustaining the jury's verdict on the strongly conflicting evidence in this case.

The second ground of the defendant's motion for a new trial is that of newly discovered evidence, which is set out in two affidavits, one by the defendant himself, and the other by Raymond F. Rowe, an employee of the defendant. In his affidavit the defendant states that on January 9, 1931, when the plaintiff testified that he gave him the check for $400, he, the defendant, was in New York on business; that he returned to Providence the next day, January 10; that he first heard the plaintiff claim that he gave him the check for $400 at the trial in the superior court, and that he, the defendant, said nothing at that time about being in New York on January 9, because "it has taken considerable research and checking to locate where I was on the day involved." The affidavit does not state any particulars of the alleged "research and checking", nor does it mention any proof independent of the plaintiff's own statement that he was in New York on January 9. This affidavit in effect is nothing more than the statement of a conclusion by the defendant, which he reaches in some undisclosed manner. In any event, it does not disclose evidence which was not reasonably available for the trial.

The affidavit of Raymond F. Rowe, states that in January 1931, he was employed as a clerk in the defendant's finance business; that "in January 1931" the defendant was in New York on business; that Martin asked him to cash the plaintiff's check during the defendant's absence, which he refused to do because of such absence; that Martin had the plaintiff's check in his possession for at least a day before the defendant returned to Providence, and that the plaintiff did not hand the check to the defendant. This affidavit is too vague and indefinite. It fails to state definitely when, in January 1931, the defendant was in New York, or how the affiant knew that Martin had the check in his possession

for "at least a day", or that Martin did not hand the check to the defendant.

Two counter affidavits were filed in behalf of the plaintiff, one by the plaintiff himself, and the other by his counsel. Each of these affidavits states that the same testimony in reference to the plaintiff handing over the check to the defendant, which the defendant in his affidavit claims to have heard for the first time in the superior court, was given by the plaintiff in the defendant's presence at the original trial of this case in the district court on February 16, 1933.

Assuming that the affidavits in behalf of the defendant did set out competent evidence, yet such evidence does not constitute newly discovered evidence. The testimony in reference to the check was given by the plaintiff in the early stages of the trial in the superior court. Even granting that the defendant was surprised by such testimony, still he had an opportunity before the trial ended of questioning his employees and of searching his mind and his records to ascertain whether or not he was in Providence on January 9, 1931. Apparently, he did not see fit to do so at that time, nor did he invoke the assistance of the court for additional time, if required. Having gone through the trial without even suggesting the point upon which he now relies in these affidavits and having taken the chance of a verdict in his favor, it is now too late to raise the point for the first time, especially in view of the kind of evidence which he terms newly discovered evidence for the purposes of his motion. See *Atlas Sheet Metal Works, Inc.* v. *Campbell,* 48 R. I. 160. The defendant's sixth exception is overruled.

The defendant's first exception, being neither briefed nor argued, is deemed to have been waived. His second exception is to a question asking the plaintiff what he did "as a result of the testimony of Mr. Martin on the supplemental proceedings", to which the plaintiff answered: "I brought suit against Mr. Caldwell." This testimony was a link in

the chain of circumstances tending to show whether the plaintiff, who already had a judgment against Martin, acted with reasonable diligence in bringing this suit against the defendant as an undisclosed principal. This exception is overruled. The defendant's third exception is to the court's ruling allowing an answer to a question asking whether a named attorney acted as counsel for both Martin and the defendant in connection with this case. We find no merit in this exception and it is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Fergus J. McOsker,* for plaintiff.

*Flynn & Leighton,* for defendant.