No. 80-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

HARRY J. MASSETT,

        Plaintiff and Appellant,

    -vs-

THE ANACONDA COMPANY, and
METROPOLITAN LIFE INSURANCE CO.,

        Defendants and Respondents.

Appeal from:  District Court of the Third Judicial District,
               In and for the County of Deer Lodge, The Honorable
               Robert Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Greg J. Skakles argued, Anaconda, Montana

    For Respondents:

        Poore, Roth, Robischon & Robinson, Butte, Montana
        Robert A. Poore argued, Butte, Montana

Submitted:  April 24, 1981

Decided: JUN 22 1981

Filed: JUN 22 1981

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court

Plaintiff, Harry J. Massett, a long-time employee of the Anaconda Company, brought an action on May 10, 1976, against defendant Anaconda Company for an alleged breach of a collective bargaining agreement. After engaging in discovery, Anaconda moved for summary judgment. The Deer Lodge County District Court granted the motion on February 22, 1980. Plaintiff appeals. For reasons discussed below, we vacate the order of the District Court granting summary judgment.

Plaintiff was employed by the Anaconda Company from 1944 to 1975. He contends that he became unable to work due to illness in January of 1975.

In April or May 1975, plaintiff first discussed the possibility of receiving a disability pension with Anaconda Company personnel. Section 2.2 of the pension plan provides pension benefits for an employee who has become totally disabled by bodily injury or disease so as to be prevented "from engaging in any substantial gainful work which, in the opinion of a qualified physician appointed by the Employing Company, will be permanent and continuous during the remainder of the Employee's lifetime" and which is not self-inflicted, the result of service in the armed forces or the result of criminal activity. In October of 1975, plaintiff applied for a disability pension for the first time. Part of the application form supplied by the Company was to be filled out by a physician. Plaintiff took the form to Dr. John Romito who had been treating his condition.

The form which Dr. Romito completed contained an erroneous definition of total disability. It defined the concept in

terms of inability due to disease or bodily injury to pursue any gainful employment or occupation whatsoever. The medical form contained alternate boxes for the examining physician to check, specifying either that the patient was or was not totally and permanently disabled. Dr. Romito did not check either box, but rather attached a note to the form which read:

> "I do not feel this patient can be considered totally disabled but he is not able to resume his normal employment as a smelterman due to exposure to industrial fumes."

The Company processed the application for disability benefits, but ultimately rejected it in November 1975.

In December 1975, plaintiff's attorney requested new medical forms containing a correct definition of total and permanent disability. Anaconda representative R. L. Brown provided those forms in a letter dated January 5, 1976.

On the advice of counsel plaintiff came to the Company's personnel office on January 26, 1976, and spoke to the Company representative, Harry McKernan. Plaintiff told McKernan that he would like to receive a "conditional" 30-year retirement pension until such time as he could reapply for and begin receiving benefits under a disability pension. Under section 2.6 of the pension plan, any employee who has completed 30 years or more of continuous service to the Company but who has not attained the age of 60 may retire and receive a so-called "30-year" pension. On December 30, 1975, plaintiff's attorney had written McKernan a letter informing the Company that he had advised his client to apply for the 30-year pension and that the Company should not construe this application as a waiver of plaintiff's claim to a disability pension. Plaintiff asserts that his poor financial condition and the Company's denial of his

original application for a disability pension necessitated his applying for a 30-year pension. Plaintiff's retirement became effective February 1, 1976.

On February 6, 1976, Dr. Robert Burroughs, a cardiologist in Spokane, Washington, completed a disability pension form containing the correct definition of total disability and checked the box on the form indicating that plaintiff was totally and permanently disabled. That medical form was remitted to the Company on February 17, 1976. On March 24, 1976, the Company responded that, inasmuch as plaintiff had voluntarily applied for and was receiving a 30-year pension, the question of his eligibility for a disability pension had become "academic." The Company refused to process the claim for disability benefits.

Plaintiff then filed the present action. The trial court granted summary judgment to the Anaconda Company because, in its view, receipt of the 30-year pension barred application for a disability pension and further that the plaintiff's failure to implement the contract's grievance procedure barred the maintenance of an action in the courts.

The following issues are dispositive of this appeal:

1. May, under the terms of the collective bargaining agreement, a retiree apply for a disability pension after he has been granted a 30-year pension if he was disabled before he retired?

2. Was the Company guilty of bad faith in rejecting plaintiff's claim for disability benefits on grounds that his receipt of a 30-year retirement barred a disability pension, thereby entitling the plaintiff to bypass the grievance procedure and litigate in the District Court?

At the outset, we note that subject matter jurisdiction

over this case derives from section 301(a) of the Labor Management Relations Act of 1947 (LMRA), (Taft Hartley Act), codified at 29 U.S.C. §185(a). Although, generally the National Labor Relations Act preempts state and federal court jurisdiction to remedy conduct that is permitted or prohibited by the Act (San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775), there are a number of significant exceptions. Section 301(a) of the LMRA expressly authorizes suits in federal court for the enforcement of a collective bargaining agreement. Federal jurisdiction is not, however, exclusive. It has been specifically held that state courts have concurrent jurisdiction under section 301 to entertain a suit by an individual employee for breach of a collective bargaining agreement. Local 174 Teamsters Union et al. v. Lucas Flour Co. (1962), 369 U.S. 95, 101, 82 S.Ct. 571, 7 L.Ed.2d 593; Charles Dowd Box Co. v. Courtney (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. The substantive rules governing the interpretation of collective bargaining agreements are controlled by federal law which the federal courts must fashion from the policy underlying the national labor laws. Textile Workers Union v. Lincoln Mills (1957), 353 U.S. 448, 456-457, 77 S.Ct. 912, 917-18, 1 L.Ed.2d 972, 980-981. The courts may, however, resort to compatible state law to find the rule that will best effectuate federal policy. Lincoln Mills, supra, 1 L.Ed.2d at 981.

Except in the rather narrow field of suits to compel performance of arbitration agreements (see United Steelworkers v. Warrior & Gulf Nav. Co. (1960), 363 U.S. 574, 578-579, 80 S.Ct. 1347, 4 L.Ed.2d 1409), we have found no federal authority "suggesting that the nebulous body of

decisional law envisioned in <u>Lincoln Mills</u> was to be formulated in derogation of the common law of contracts", Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health and Welfare Trust (D.C. App. 1973), 310 A.2d 604. Hence, we see no reason not to apply the same rules of construction in cases involving collective bargaining contracts as we apply in cases dealing with contract law generally. See Clarke v. Ward Baking Co. (D.C.App. 1963), 191 A.2d 450, 452.

We turn now to the first issue raised by the plaintiff on appeal. The plain language of section 2.2 of the pension plan entitles an employee to a disability pension if he becomes totally and permanently disabled and if he has completed ten years of continuous service to the Company. In other words, a worker with the requisite number of years of service has a vested right to a disability pension if he can show that he became disabled while employed with the Company.

The record shows that the plaintiff had logged well in excess of ten years of continuous service to Anaconda as of the date he ceased working for the Company. Plaintiff claims to have become disabled while he was in the employ of the Company. If he can prove that contention, he is entitled to disability benefits.

The Company argues, however, that the plaintiff rendered himself ineligible for any disability benefits by applying for a 30-year pension. He thereby relinquished his employment status, Anaconda argues, and became a "pensioner". Only "employees", the Company insists, may apply for disability benefits. We disagree. Plaintiff's acceptance of a 30-year pension does not constitute an election of remedies nor a waiver.

-6-

As a legal doctrine, election is the exercise of a choice of an alternate and inconsistent right or course of action. Full knowledge of the nature of inconsistent rights and of the necessity of choosing between them are elements of election. Eckstein v. Caldwell (1938), 61 R.I. 142, 200 A. 434, 437 (election of remedies presupposes the knowledge of alternatives with an opportunity for choice); Frederickson v. Nye (1924), 110 Ohio St. 459, 144 N.E. 299, 301 (in order that election of one remedial right shall bar another, the rights must be inconsistent and the election must be made with knowledge). Plaintiff's application for a 30-year retirement can in no sense be understood as an election of one out of two potential alternate remedies to the disability he allegedly suffered while on the job. The only disability-related remedy he sought was a disability pension. His claim to the 30-year pension rested on a different factual basis, namely his 30 years of service to the Company. In short, the doctrine of election of remedies does not apply for the simple reason that the record reveals no alternate remedies from which to elect.

If the plaintiff was indeed disabled while he was still an employee with the Company, the only way he could lose his vested right to a disability pension would be by waiving that right. By definition waiver is the intentional relinquishment of a known right. The record shows that the plaintiff has not waived his claim to a disability pension. He expressly informed Anaconda representative McKernan that he wanted to take out a 30-year pension "conditionally" -- i.e., until he could begin receiving a disability pension. In addition, his attorney sent a letter to the Company stating that his client's application for a 30-year retire-ment, was not to be understood as a waiver of his claim to

disability benefits. Clearly the plaintiff did not intend to relinquish any right he may have had to a disability pension. The mere fact that the Company representatives contended that receipt of one kind of pension precluded application for another kind did not deprive the plaintiff and his attorney of the right to interpret the provisions of the pension plan differently.

The plaintiff does not claim that he is entitled to the cumulative benefits of both the disability and the 30-year pension. Plaintiff seeks a disability pension because the benefits are greater than the benefits available under the 30-year pension plan. He laid claim to the 30-year pension "conditionally" and will only be limited to that plan if he cannot qualify for disability benefits.

The next inquiry is whether the Company acted in good faith in refusing to process the application. Anaconda rejected the plaintiff's application because, in its view, the plaintiff had voluntarily relinquished his employment status and had become a "pensioner" by applying for a 30-year retirement. As such, the Company contended plaintiff was no longer eligible for a disability pension because under section 2.2 of the pension plan only "employees" are eligible for disability.

The essential inquiry is whether Anaconda asserted that defense to plaintiff's application in good faith. If the Company acted in bad faith in refusing to implement arbitration, then we would allow the District Court action to go forward without resort to the procedure required by the collective bargaining agreement.

We find the record to be devoid of any indication that the Company acted in bad faith. There is no evidence of any

personal enmity towards, nor of any discrimination against, the plaintiff.

We have considered Anaconda's defense on the merits. Because we today disagree with the Company's legal position, does not mean that the Company had no right to assert that position.

Where the record lacks any affirmative evidence of bad faith, we will neither presume nor accept conclusory assertions that a litigant's claim or defense is unjustified unless it is so patently frivolous as to plainly exclude any reasonable merit. Here we hold that Anaconda's refusal to process plaintiff's claim was made in good faith.

The legal question of plaintiff's eligibility for benefits was a matter for judicial determination. Now that the determination has been made, arbitration procedures must follow. Section 5.2 of the pension plan provides a grievance procedure to settle any medical dispute concerning an employee's eligibility for disability pensions. Under that section the Company must refer any dispute concerning an applicant's disability to a medical board for resolution.

Accordingly, we remand the case to the District Court with directions to order the Anaconda Company to proceed with arbitration.

_____
Justice

We concur:

_____
Chief Justice

-9-

_____
John Conway Harrison

_____
                Justices


Mr. Justice Daniel J. Shea dissents and will file a dissenting
opinion later.