PRICE, Senior District Judge:
 

 Mann Farms, Inc. (debtor) filed its petition pursuant to Chapter 12 of the Bankruptcy Act.
 
 [1]
 
 As required by the Act, debt- or filed its Plan of Reorganization (Plan I). In Plan I, it classified a debt of more than $385,000 held by the Traders State Bank of Poplar (bank) as a disputed claim. Plan I further specified that the validity of the bank’s lien status “is to be determined in a state court action in connection with the resolution of the debtor’s allegations of bad faith and related claims against Trader’s [sic] State Bank.”
 
 [2]
 

 The bank filed a motion to dismiss Plan I, alleging that the plan as formulated could not be confirmed under 11 U.S.C. § 1225(a)(5).
 
 [3]
 
 The bankruptcy court issued
 
 *1212
 
 an order permitting the debtor to pursue its state court claim against the bank, but ruling that the debtor could not, in the state court litigation, seek to cancel or nullify the same promissory notes and mortgages that it sought to restructure through the Chapter 12 proceedings. The court reasoned that such state court relief would thwart the statutory scheme of Chapter 12.
 

 The debtor promptly filed an amended Plan of Reorganization (Plan II). In Plan II, it listed the bank as a “class I secured debtor.” Plan II further elaborated on the status of the bank:
 

 Debtor will
 
 not contest the validity of notes, mortgages or security interests of the Bank in state court or by adversary proceeding in this court.
 
 Debtor does intend to pursue the state court action previously commenced by the Debtor, insofar as prosecution of the Debtor’s tort claims are concerned, (emphasis added)
 

 The bankruptcy judge approved Plan II. The bank appealed to the district court, which affirmed the bankruptcy court’s decision.
 

 The district court’s jurisdiction comes from 28 U.S.C. § 158(a). The jurisdiction of the court comes from 28 U.S.C. § 158(d). The notice of appeal was timely filed.
 

 We review
 
 de novo
 
 the district court’s decision. We review the bankruptcy court’s findings of fact for clear error, and its conclusions of law
 
 de novo. See In re Camino Real Landscape Maint. Contractors,
 
 818 F.2d 1503, 1505 (9th Cir.1987).
 

 The bank first urges us to hold that the state court action presently being maintained by the debtor was preempted by the bankruptcy court’s confirmation of Plan II. Both parties agree that federal preemption of state law can only occur when “either ... the nature of the regulated subject matter permits no other conclusion, or ... the Congress has unmistakenly so ordered.”
 
 Florida Lime and Avocado Growers, Inc. v. Paul,
 
 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).
 

 In support of its position, the bank points to
 
 Allis-Chalmers Corp. v. Lueck,
 
 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985), which it argues held that when the contractual relationship is governed by federal law, and state tort law purports to define the meaning of certain contractual terms, state law will be preempted by federal law.
 
 [4]
 
 The bank argues that that is basically what happened here: the state tort claim can result in a
 
 de facto
 
 restructuring of its claim in contravention of the federally prescribed bankruptcy plan.
 

 Undoubtedly, a bankruptcy reorganization plan can preempt a state law claim. As the bankruptcy court pointed out, Congress has provided that the bankruptcy court can restructure a secured creditor’s claim so long as the secured creditor retains the lien securing the claim and is paid the present value of the claim.
 
 See
 
 11 U.S.C. § 1225(a)(5)(B). Despite the bankruptcy court’s confirmation of a plan of reorganization, if the debtor were allowed to engage in conduct that has the potential to eliminate these assurances to the creditor, it would frustrate the purposes of § 1225(a)(5)(B), and the development of reorganization plans under Chapter 12.
 
 See In re Lewis Industries,
 
 75
 
 *1213
 
 B.R. 862, 872 n. 3 (Bankr.D.Mont.1987). Indeed, it was the existence of this principle that required the bankruptcy court to disapprove the debtor’s first plan of reorganization.
 
 [5]
 

 The issue presented here is whether the state tort claim of the debtor has the potential for restructuring the bank’s claim, and redefining the parties’ contractual relationship. In order for that to occur, two things must happen: 1) the debtor’s state court case must seek relief which would result in the restructuring of the bank’s loan; and 2) the state court judgment must ultimately require restructuring of the bank’s claim, despite the debtor’s statement in the approved plan that it will not contest the validity of the bank’s notes, mortgages or security interests in either state or bankruptcy court.
 

 The debtor has burned all of the bridges behind it, binding itself not to seek relief from the bank’s secured claim in either state or federal court. The debtor does not seek equitable relief in state court, only damages. Thus, Counts II and III of the state court action, which complain of the bank’s failure to aid the debtor in obtaining financing from other lenders, could not result in altering the relationship of the parties which they agreed to in the presently approved Plan of Reorganization.
 

 Under Montana law, “[a] cause of action for breach of the implied covenant of good faith and fair dealing is a separate tort action, independent of the underlying contract.”
 
 Tynes v. Bankers Life Co.,
 
 730 P.2d 1115, 1120 (Mont.1986). Thus, the state court is bound by the nature of the cause of action and can respond only in an award of damages. Further, should the state attempt, by decree or otherwise, to impinge upon the validity of the bank’s loan to the debtor, under these facts, the debtor has foreclosed re-entry into the bankruptcy court to give effect to the state court’s action.
 

 The purpose of Chapters 11 through 13 is to create stable reorganization plans that treat all creditors fairly based on state law and contractual agreements governing the debtors’ and creditors’ commercial relationship. They were not intended to usurp all of the state’s power to determine the lien priority of security instruments.
 

 Demonstrating, as we have, that a state judicial determination based on the facts of this case cannot affect the approved plan of reorganization, likewise it cannot infringe upon federal law. The state court action was not preempted by the plan of reorganization. The state court and the bankruptcy court each have separate areas in which to operate in this case.
 

 The bank next argues that the debtor’s bankruptcy proceeding constituted an election of remedies that precludes the debtor’s state court action.
 

 As a legal doctrine, election is the exercise of a choice of an alternate and inconsistent right or course of action. Full knowledge of the nature of the inconsistent rights and of the necessity of choosing between them are elements of election.
 
 Eckstein v. Caldwell
 
 (1938), 61 R.I. 142, 200 A. 434, 437 (election of remedies presupposes the knowledge of alternatives with an opportunity for choice);
 
 Frederickson v. Nye
 
 (1924), 110 Ohio St. 459, 144 N.E. 299, 301 (in order that election of one remedial right shall bar another, the rights must be inconsistent and the election must be made with knowledge).
 

 Massett v. Anaconda Co.,
 
 630 P.2d 736, 739 (Mont.1981).
 

 All tort remedies sought here are independent of the contractual rights of the bank; they will not interfere with the approved plan of reorganization. Because of the debtor’s agreement not to relitigate the matters concluded by the approved plan, the pendency of the Chapter 12 bankruptcy
 
 *1214
 
 proceeding in no way precluded the debtor from pursuing its separate tort claims.
 

 Finally, the bank argues that the debt- or’s plan of reorganization was not proposed in good faith.
 

 Congress enacted Chapter 12 in response to the agricultural debt crisis of the mid-1980s. It modeled Chapter 12 upon Chapter 13.
 
 See
 
 5 Collier on Bankruptcy ¶ 1200.01[2], at 1200-3 to 1200-4 (15th ed. 1979). The goal in a Chapter 12 case is confirmation of a debt adjustment plan.
 
 Id.
 
 ¶ 1200.01[3], at 1200-5. In order to confirm a plan under Chapter 12, the plan must comply with all applicable provisions of the Code, must be proposed in good faith, and must provide that each holder of a claim will receive property under the plan having a present value not less than what such holder would receive if the debtor’s estate were liquidated under Chapter 7.
 
 Id.
 
 at p. 1200-6.
 

 Section 1225(a)(3) requires the court to consider whether a plan filed in a Chapter 12 proceeding is proposed in “good faith” and not by any means forbidden by law.
 
 See also
 
 Collier,
 
 supra,
 
 ¶ 1129.02 at 1129-29 (citing
 
 In re Madison Hotel Associates,
 
 749 F.2d 410, 425 (7th Cir.1984));
 
 In re Lewis Industries,
 
 75 B.R. 862, 871 (Bankr.D.Mont.1987). The court reviews the plan for “fundamental fairness in dealing with one’s creditors,” and as long as this exists, confirmation is in order.
 
 In re Foster,
 
 84 B.R. 707, 710 (Bankr.D.Mont.1988) (internal quotations omitted). Cases considering the “good faith” requirement under both Chapters 11 and 13 are instructive and equally relevant in determining “good faith” under § 1225(a)(3). Collier,
 
 supra,
 
 ¶! 1225.02[3], at 1225-5.
 

 Although not defined under the Code, “good faith” is generally interpreted to mean “a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.”
 
 In re Nite Lite Inns,
 
 17 B.R. 367, 370 (Bankr.S.D.Cal.1982);
 
 In re Coastal Cable T.V., Inc.,
 
 709 F.2d 762, 764 (1st Cir.1983);
 
 Matter of Nikron, Inc.,
 
 27 B.R. 773, 778 (Bankr.E.D.Mich.1983);
 
 In re Lewis Industries,
 
 75 B.R. 862, 871 (Bankr.D.Mont.1987). Similarly, proposed plans are reviewed for fundamental fairness in dealing with one’s creditors.
 
 Lewis Industries,
 
 75 B.R. at 871 (citing
 
 In re Rimgale,
 
 669 F.2d 426, 432-33 (7th Cir.1982)) (quoting
 
 In re Beaver,
 
 2 B.R. 337, 340 (Bankr.S.D.Cal.1980)). The good faith inquiry is quite broad and ad hoc. It requires the court to consider the totality of the circumstances.
 
 See In re Goeb,
 
 675 F.2d 1386, 1390 & n. 9 (9th Cir.1982) (proper inquiry is whether debtor acted “equitably”);
 
 see also In re Chinichian,
 
 784 F.2d 1440, 1444-45 (9th Cir.1986) (court must examine the debtor’s intentions and the totality of the plan in light of the spirit and purposes of Chapter 13).
 

 Section 1123(b)(3)(B) explicitly allows the plan to contain provisions allowing the debtor, trustee or other estate representative to pursue, retain or enforce any cause of action existing at the time the petition was filed. Collier,
 
 supra,
 
 ¶ 1123.02[3], at 1123-21. Retention of such choses in action is consistent with § 541(a)(1) of the Code defining property of the estate.
 
 E.g., Sierra Switchboard Co. v. Westinghouse Elec. Corp.,
 
 789 F.2d 705, 707 (9th Cir.1986) (classifying debtor’s tort claim as property of the estate).
 

 The bank contends the plan was not proposed in “good faith.” It argues that the debtor is simply using the bankruptcy as a shield to allow it time to bring the state court tort “bad faith” action. Further, the bank contends that the debtor is using the bankruptcy court action to pay for its state court action. There are several answers to these arguments.
 

 First, one of the fundamental purposes behind the Code is to provide debtors with a “fresh start,” either through liquidation or reorganization. Reorganization requires the treatment of claims of creditors, including the “cram down” provisions.
 
 [6]
 
 The plan in the instant case makes no objection to the nature, extent, validity, and amount of
 
 *1215
 
 the bank’s claim or security interest. It therefore appears that the bank will receive property having a present value at least equal to that which the bank would receive if the estate were liquidated under Chapter 7. This is without regard to what occurs in the state court action. The debt- or has contracted for a definite debt burden without knowing whether the state tort action will provide any relief.
 

 Further, as pointed out in the debtor’s brief, the debtor is liable only for the costs of state court litigation; that case is being handled on a contingent basis. Hence, the claim that the bankruptcy court action is a ploy to maintain the state court action cannot be given credence. After all, the debt- or had the option either of allowing its creditors to foreclose their secured claims and proceed under Chapter 7 of the Bankruptcy Act free of the obligation to make the payments required by the plan of reorganization, or of preparing and implementing a plan of reorganization as was done here. The bankruptcy court’s implicit finding that Plan II was proposed in good faith was not clearly erroneous.
 

 The orders of the district court are affirmed.
 

 [1]
 

 . The Bankruptcy Act is codified at 11 U.S.C. § 101 et seq. Chapter 12, 11 U.S.C. § 1201 et seq., codifies the Family Farmer Bankruptcy Act of 1986, Public Law No. 99-554.
 

 This opinion will use "the Act” to refer to the entire Bankruptcy Act, and "the Code” to refer to Title 11 of the United States Code. Except as specifically noted, all statutes cited in this opinion are codified in Title 11, U.S.C.
 

 [2]
 

 . Mann Farms did initiate a state court action against the bank on March 24, 1988, alleging fraud, misrepresentation, interference with management decisions and outside financing attempts, and breaches of fiduciary duty and the implied covenant of good faith and fair dealing. That suit sought over $5 million in damages from the bank. At the time of argument in this appeal, an appeal from the state court's summary judgment for the bank was pending in the Supreme Court of Montana.
 

 [3]
 

 . One of the requirements for confirmation of a Chapter 12 plan, 11 U.S.C. § 1225(a)(5), provides:
 

 with respect to each allowed security claim provided for by the plan—
 

 
 *1212
 
 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder;
 

 [4]
 

 . We question whether
 
 Allis-Chalmers
 
 can be transplanted from the special context of federal labor law, where a federal common law of labor contracts governs, to the present bankruptcy case, where state law governs both the tort claim and the contract creating the debt. We need not engage in an extended analysis of
 
 Allis-Chalmers,
 
 however, for we have concluded that the present case poses no danger of inconsistent federal and state contract interpretations such as concerned the Supreme Court in
 
 Allis-Chalmers.
 
 Rather, we affirm that state adjudication of this debtor’s tort claim cannot possibly infringe federal interests.
 

 [5]
 

 . The bankruptcy court did not consider the problem one of federal preemption. Instead, it focused upon the requirements of § 1225(a)(5)(B). It held that the debtor could not violate these requirements by pursuing a state remedy to nullify a creditor’s security while simultaneously seeking confirmation of its plan. But the essence of preemption is the supremacy of federal law over conflicting state law, and we find a supremacy principle implicit in the bankruptcy court's analysis.
 

 [6]
 

 . "The ability to confirm a plan over the objection of creditors is commonly known as 'cram down.'"
 
 Nite Lite Inns,
 
 17 B.R. at 371. Chapter 12 authorizes cram down in § 1225(a)(5)(B).