**Edmond SANNINI and Francis DiMichele, Plaintiffs below, Appellants,**

v.

**Oleda D. CASSCELLS and S. Ward Casscells, her husband, Defendants below, Appellees.**

Supreme Court of Delaware.

Submitted Sept. 19, 1978.

Decided April 2, 1979.

Frank J. Gentile, Jr., and Stuart B. Drowos, Wilmington, for plaintiffs-appellants.

David Roeberg and Frederick T. Haase, Jr., of Roeberg & Agostini, P. A., Wilmington, for defendants-appellees.

Before HERRMANN, Chief Justice, BIFFERATO and BALICK, Judges.

HERRMANN, Chief Justice:

The plaintiffs, Edmond Sannini and Francis DiMichele, appeal the judgment of the Court of Chancery requiring them to reimburse the defendants, Oleda D. and S. Ward Casscells, the sum of $395,000 in return for transfer of the legal title to a parcel of real property in Wilmington which, the Court ruled, the latter held as constructive trustees for the former.

## I.

This appeal is part of the second stage of a bifurcated proceeding. In the first stage, the Court of Chancery held that the defendant Oleda Casscells, a saleswoman for a real estate broker who purchased for herself the real estate in question then being actively sought by the plaintiffs as customers of her broker, should not be allowed to retain that property. Based on its finding that Mrs. Casscells had violated a fiduciary duty that she owed Sannini and DiMichele, the Trial Court imposed a constructive trust on the property for the benefit of Sannini and DiMichele, and ordered the Casscells to convey the property to Sannini and DiMichele. The conveyance was conditioned upon the restoration to the Casscells by Sannini and DiMichele of such portion of the purchase price as had previously been paid by the Casscells, plus appropriate settlement costs. That judgment was affirmed by this Court. *Casscells v. Sannini*, Del.Supr., 374 A.2d 839 (1977).

At the second stage of the case in the Chancery Court, a hearing was held to determine the amount of reimbursement required as an equitable prerequisite to the transfer of legal title. The Trial Court concluded that Sannini and DiMichele should pay the Casscells $395,000 in return for the conveyance of the property, subject to a $140,325 first mortgage lien. The Vice Chancellor entered an order dated December 19, 1977, stating, *inter alia*:

"3. Pursuant to agreement of counsel it is hereby ordered that if the aforesaid conveyance does not take place within 10 days from the date hereof, as a result of the failure of the plaintiffs to tender the required consideration [$395,000] to obtain such conveyance, then the constructive trust hereinbefore imposed upon the property shall be fully dissolved and de-

fendants shall own said property, free and clear of any legal or equitable claims of plaintiffs."

Sannini and DiMichele did not tender the required payment within the ten day period specified by the order. Although they filed an appeal on December 21, 1977, they did not seek a stay of the December 19 order.

At oral argument on September 19, 1978, Sannini and DiMichele's counsel informed the Court that, under the authority of the Vice Chancellor's Order of December 19, the Casscells had sold and conveyed the property to another party.[1]

## II.

First on this appeal, the plaintiffs argued that the $395,000 figure, which the Trial Court concluded was the adjustment to be paid by Sannini and DiMichele to the Casscells in return for the conveyance of the property, was incorrect because the Trial Court applied the wrong standard of care to the defendants in their role as constructive trustees. The Trial Court rejected the plaintiffs' argument that the standard for express trustees (the reasonably prudent person standard) should have been applied to the Casscells in their capacity as constructive trustees because "Mrs. Casscells did not act deliberately in disregard of paramount rights. which she knew the plaintiffs had, but rather she acted on the misguided belief that because of her prior negotiations for the property before the plaintiffs' [Sannini and DiMichele] appearance upon the scene, she was free to compete against them for it."

█ We do not reach the issue of the standard of care applicable to the Casscells as constructive trustees because the failure of the plaintiffs to file a supersedeas bond to stay the effect of the December 19 order of the Court of Chancery, and the subsequent sale of the property by the Casscells, renders that issue moot.

The filing of the appeal did not automatically stay the judgment of the Trial Court; a supersedeas bond was necessary in order to accomplish that result, Del.Const., Art. IV, § 24;[2] Rule 62(d) of the Court of Chancery;[3] State ex rel. Caulk v. Nichols, Del. Supr., 281 A.2d 24, 27 (1971).

Since Sannini and DiMichele failed to tender the $395,000 adjustment and failed to stay the judgment of the Court of Chancery, the Order of that Court dated December 19, by its express terms, dissolved the constructive trust and placed legal ownership of the property in the Casscells "free and clear of any legal or equitable claim of [Sannini and DiMichele]." The Casscells sold the property as they were free to do by the terms of the order in the absence of a stay.

█ Although the filing of a supersedeas bond is not a condition precedent for seeking appellate review by this Court, the failure to file a supersedeas generally will ren-

---

1. Counsel for Sannini and DiMichele, stated, "That [the Vice Chancellor's order] gave them [the Casscells] the right to dispose of the property, which eventually they did . . .." "It [the sales contract] has been fully executed . . . . The property has been conveyed to the Steins or their nominees. The constructive trustees have received a portion of the purchase price . . . . The transaction went through."

2. Del.Const., Art. IV, § 24 provides:
   "§ 24. Security for stay of proceedings on appeal or writ of error.
   "Section 24. Whenever a person, not being an executor or administrator, appeals or applies to the Supreme Court for a writ of error, such appeal or writ shall be no stay of proceedings in the court below unless the appellant or plaintiff in error shall give sufficient security to

be approved by the court below or by a judge of the Supreme Court that the appellant or plaintiff in error shall prosecute respectively his appeal or writ to effect, and pay the condemnation money and all costs, or otherwise abide the decree in appeal or the judgment in error, if he fail to make his plea good.

3. Rule 62(d) of the Court of Chancery provides: "Stays pending appeal and stay and cost bonds shall be governed by article IV, section 24 of the Constitution of the State of Delaware and by the Rules of the Supreme Court." Former Delaware Supreme Court Rule 22, which was in force when this appeal was filed, required that a supersedeas bond be presented in the first instance to the trial court, and allowed the trial court discretion in the decision to grant a stay pending appeal.

der an appeal moot where it deprives the appellate court of the ability to grant the relief sought.[4] This risk is especially high in a case where, as here, a supersedeas would have been necessary to stay the sale of real property. If the judgment involves the ownership of property, the subsequent bona fide sale of the property to a person who is not a party to the litigation will deprive the appellate court of its ability to render effective relief. See e. g., *Matter of Nat. Homeowners Sales Service Corp.*, 4th Cir., 554 F.2d 636 (1977).

The question of mootness in the instant case depends upon whether this Court could render effective relief if it determined that the Chancery Court had applied the wrong standard of care to the Casscells in their role as constructive trustees, and that, consequently, the amount needed to execute the trust would be less than the $395,000 figure reached by the Vice Chancellor. If the Casscells still owned the property, this issue would not be moot. However, because the Casscells no longer hold title to the property, the decision of that issue in this case would be without force or effect. Under the circumstances, any conclusion we might announce on that issue would be an impermissible advisory opinion. *State ex rel. Traub v. Brown*, Del.Supr., 197 A. 478, 479 (1938); *State v. Mancari*, Del.Supr., 223 A.2d 81 (1966).

Accordingly, by reason of the sale of the property under the authority of the Trial Court's Order, the appeal of the issue of the proper standard of care applicable to a constructive trustee is moot in this case.

### III.

■ As the second ground of their appeal, Sannini and DiMichele argue that the deterioration of the rental market for the property in question since the time when their interest in the property arose, resulted in their inability to obtain financing to acquire title to the property under the terms of the Trial Court's decision. They assert that, because their inability to obtain financing meant that the parties were not left in *status quo ante*, they should be awarded damages as an alternative remedy.

When this cause of action first arose in 1973, Sannini and DiMichele had the choice of either suing in equity to impress a constructive trust on the property, or at law for money damages. They chose to proceed in equity, electing the remedy of a constructive trust; the complaint which they filed to initiate this action in 1973, did not seek money damages. They proceeded to final judgment in Chancery—the declaration of the constructive trust in 1975—without seeking damages. That judgment was affirmed by an order of this Court in 1977, and the cause was remanded for further proceedings in execution of the trust. *Casscells v. Sannini*, Del.Supr., 374 A.2d 839 (1977). Only when the second stage of this case began—to determine the amount of money Sannini and DiMichele would be obliged to pay in order to execute the trust—did Sannini and DiMichele commence to assert a money damages remedy. In their pre-trial memorandum dated August 10, 1977, listing the parties' contentions, the plaintiffs first raised the possibility of damages as an alternative remedy. An examination of the transcript of the trial of the second stage of the case demonstrates that there was no substantial evidence of damages offered to support Sannini and DiMichele's apparent afterthought of an alternative remedy. In the Vice Chancellor's letter opinion deciding the second stage of the bifurcated proceeding, there is no mention of the issue of damages. Only now at the appeal stage, after Sannini and DiMichele had concluded that they did not wish to pay the $395,000 required by the Trial Court to execute the trust, do they press an argument for damages.

The record does not provide a basis for awarding damages. That issue was not

4. See *Matter of Combined Metals Reduction Co.*, 9th Cir., 557 F.2d 179, 187 (1977). Cf. *Fink v. Continental Foundry & Machine Co.*, 7th Cir., 240 F.2d 369, 374 (1957), cert. denied, 354 U.S. 938, 77 S.Ct. 1401, 1 L.Ed.2d 1538 (1957). Also see 9 *Moore's Federal Practice* § 208.03 at 1407 f. (2d ed. 1975).

properly raised below; it was not decided below. Accordingly, it is not in proper posture for appellate review now.

### IV.

■ Damages are also precluded by the doctrine of election of remedies. As stated above, when this cause of action arose, Sannini and DiMichele had the choice of proceeding in equity to impress a constructive trust on the property or at law for damages. The equitable remedy proceeds on the theory that title to the property lies in the plaintiffs and that the defendants simply hold the property as constructive trustees for the plaintiffs; the legal remedy for damages proceeds on the assumption that title to the property is in the defendants. Because the two remedies are irreconcilably inconsistent,[5] the choice of Sannini and DiMichele to proceed in equity to impress a constructive trust constituted an election of remedies, and the pursuit of that choice to final judgment now precludes them from seeking damages. See Annot., "Election of Remedies: Inconsistency of Action for Damages for Fraud and Suit to Establish Constructive Trust Based on Same Transaction," 35 A.L.R. 1175; *Frederickson v. Nye*, Ohio Supr., 110 Ohio St. 459, 144 N.E. 299, 35 A.L.R. 1163 (1924); 25 Am.Jur.2d "Election of Remedies" § 30 (1966). In *Hoskins v. Smith*, Wash.Supr., 133 Wash. 90, 91, 233 P. 279, 280 (1925) the rule was stated as follows:

> "[W]e have followed the well-established rule that one who has the right to impress a trust may either bring an action for damages or an action to impress a trust; that the bringing of either is an election as to the remedy; . . . ."

Having pursued their equitable remedy to final judgment, the deterioration in the rental value of the property in question, after Sannini and DiMichele chose to proceed in equity to impress a trust upon the property, does not permit Sannini and Di-

Michele to turn this typical equity case into a law suit for damages. In an analogous situation, the Colorado Court of Appeals would not permit a stockholder who had elected to sue in equity to clear title to certain stock to seek damages in a subsequent suit. The stockholder claimed damages were due her because the stock declined in value during the course of the earlier litigation. However, the Court rejected this claim stating that "[b]y asking only for clear title in the first action, she thereafter assumed the risk of market fluctuation." *Thornburg v. Homestead Minerals Corp.*, Colo.App., 32 Colo.App. 299, 300, 513 P.2d 219, 220 (1973), aff'd, Colo.Supr., 184 Colo. 141, 518 P.2d 941 (1974). A similar holding was reached in *Bracken v. Atlantic Trust Co.*, N.Y.Ct.App., 167 N.Y. 510, 60 N.E. 772 (1901), where it was held that the election by plaintiff to proceed in equity for delivery of stock is a bar to a subsequent legal action to recover damages sustained by reason of depreciation of the price of the stock which occurred while the litigation was pending.

■ A well stated rule in the contract context is relevant to the disposition of this argument:

> "A defrauded party cannot defer a decision as to affirmance or recision in order to speculate on future events. Once having elected his rights and remedies, he must adhere thereto.
>
> Having affirmed this otherwise voidable transaction, [that party] is conclusively barred from any relief based on disaffirmance or recision." *Continental Grain Co. v. First National Bank of Memphis*, W.D.Tenn., 162 F.Supp. 814, 833 (1958).

Conversely, having elected to disaffirm the sale of the property to the Casscells by pressing the equity remedy to the constructive trust end, Sannini and DiMichele may not now seek to affirm the transaction by seeking money damages.

---

**5.** See *Taylor v. Robertson Petroleum Co.*, Kan. Supr., 156 Kan. 822, 137 P.2d 150 (1943); and 28 C.J.S. "Election of Remedies" § 5 (1941), which states that: "Actions proceeding on the theory that title to property is in one party are inconsistent with those proceeding on the theory that title is in another party."

**932**

## V.

■ This case was not one where the Court of Chancery had concurrent jurisdiction over equitable and legal claims of a multicount complaint. In those circumstances when the equitable claim dissipates, a court of equity has the discretion to retain jurisdiction over the legal claim and to award damages as justice requires. See *Getty Refining and Marketing v. Park Oil, Inc.*, Del.Ch., 385 A.2d 147 (1978); *New Castle Co. Vol. Fire A. v. Belvedere Vol. Fire Co.*, Del.Supr., 202 A.2d 800 (1964). In those cases, because the legal and the equitable claims were consistent, the Chancery Court had concurrent jurisdiction over the legal and equitable claims. However, in this case, the legal and equitable claims are inconsistent. Because of this inconsistency, the plaintiffs were obliged to choose between remedies when they began their suit, and the pursuit of one remedy to final judgment precludes recourse to the other remedy. There must be an end to litigation.

\* \* \*

Affirmed.