**Raymond RADULSKI, guardian ad litem for Mary Louise TAYLOR, a person adjudged mentally ill, Respondent Below, Appellant,**

v.

**DELAWARE STATE HOSPITAL, a Facility of, and for and on behalf of, the DIVISION OF ALCOHOLISM, DRUG ABUSE AND MENTAL HEALTH, OF the DEPARTMENT OF HEALTH AND SOCIAL SERVICES, State of Delaware, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 22, 1988.
Decided: May 17, 1988.

Donn Devine, Esquire, Wilmington, on behalf of respondent below, appellant.

Robert B. Walls, Jr., Wilmington, on behalf of petitioner below, appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The appellant, Raymond Radulski ("Radulski"), is an attorney who was appointed by the Superior Court to act as the guardian *ad litem* for Mary Louise Taylor ("Taylor"). Following a hearing on June 17, 1987, the Superior Court issued an order dated June 19, 1987, finding Taylor to be mentally ill and committing her involuntarily to the Delaware State Hospital (the "Hospital") pursuant to the provisions of 16 *Del. C.* ch. 50. The order was effective for a six-month period. At the end of six months, but prior to expiration of the order of commitment, the Superior Court was required to conduct a further hearing to ascertain whether Taylor should remain hospitalized. The guardian filed this appeal alleging that Taylor's commitment was neither necessary nor authorized by statute.[1]

On December 8, 1987, during the pendency of this appeal and as the six-month commitment period was about to expire, Radulski waived Taylor's right to the six-month hearing. That waiver was executed without judicial approval and was not made known to the Superior Court. Thus, the original order of commitment expired while this appeal was pending. On April 22, 1988, the Superior Court executed an order which extended, *nunc pro tunc*, the duration of the June 19, 1987 commitment order until this appeal had been decided.

Without reaching the merits of the appeal from the June 19, 1987 order, this Court finds that an appeal of that order is moot because the order, by its original terms, has expired. Furthermore, this Court finds that the Superior Court was without jurisdiction to extend, *nunc pro tunc*, the duration of an expired order.

*Procedural History*

Taylor is a thirty-five year-old unmarried woman with a history of previous hospital admissions for mental illness. On February 5, 1987, Taylor was admitted as a voluntary patient to the Hospital.[2] After seven weeks of treatment without improvement, Taylor demanded to be released. The Hospital initiated involuntary commitment proceedings on April 8, 1987, but dismissed them on April 23, 1987 when Taylor executed a second voluntary commitment certificate. On April 27, 1987, Taylor again demanded to be released. The Hospital provisionally admitted her as an involuntary patient on May 1, 1987 and immediately initiated the proceedings which are the subject matter of this appeal.

On June 17, 1987, the Superior Court conducted a hearing, pursuant to 16 *Del. C.* § 5010,[3] to determine whether Taylor was

1. Specifically, the guardian argues:
   Civil commitment as a "mentally ill person" under 16 *Del.C.* ch. 50 requires a finding that within the reasonably foreseeable future, the patient will present a substantial threat of harm through dangerous conduct, that is, an act or acts that may significantly injure self or others or property, as contrasted with inability to provide or care for self, irresponsibility, or vulnerability to victimization.
   Civil commitment is neither necessary nor *statutorily authorized to protect a mentally disordered* person who lacks capacity to make a responsible decision about her own need for care, if the finding of "dangerous to self" is based solely on the respondent's vulnerability to victimization in an uncontrolled environment.

2. Pursuant to Delaware statutory law, when an applicant is not under the care of a medical doctor, as qualified in the statute, the Hospital may not admit a patient on a voluntary basis "unless the Superintendent first determines that the applicant has sufficient insight and capacity

to make responsible application for voluntary hospitalization." 16 *Del.C.* § 5123(b).

3. Section 5010 provides:
   **§ 5010. Hearing to determine mental illness.**
   As a result of the hearing to determine mental illness, the court shall make specific findings:
   (1) That the involuntary patient is not a mentally ill person, in which case the court shall order that the involuntary patient be discharged and released forthwith; or
   (2) That based upon clear and convincing evidence, the involuntary patient is a mentally ill person in which case the court shall enter an order of disposition, which disposition shall be effective for a period not to exceed 6 months. In determining the disposition of the involuntary patient the court shall consider all available alternatives, including inpatient confinement at the hospital, and shall order such disposition as imposes the least

mentally ill. Based on the testimony at the hearing, the Superior Court adjudged Taylor to be mentally ill. On June 19, 1987, it ordered Taylor to remain an involuntary patient at the Hospital. The Superior Court's order provided in part:

> *This Order* follows an initial hearing to determine Respondent's mental illness, and *is effective for a period of six months, pursuant to Section 5012(a)*, Title 16, Delaware Code. On the expiration of six months, and earlier if the Respondent again requires hospitalization, the Division [of Alcoholism, Drug Abuse and Mental Health] shall report to the Court its opinion as to whether Respondent is still a mentally ill patient in need of involuntary treatment, and if so, the court will order a further hearing at the earliest practicable date.

(Emphasis added).[4] Early in December of 1987, the Hospital's attorney contacted Radulski's attorney by telephone to inform him that a petition would be filed with the Superior Court to schedule the court ordered six-month hearing to review Taylor's condition. After consulting with his lawyer, Radulski, as Taylor's guardian, sent a letter to the Hospital's attorney. It was dated December 8, 1987 and stated, in part, as follows:

> After consultation with Mr. Devine [Radulski's attorney], we have determined not to exercise Miss Taylor's right to a six month hearing under 16 *Del.C.* Chpt. 50 at this time. This in no way waives our right to exercise this option in the future.

As a consequence of this letter, the Hospital's attorney did not file a petition for a hearing with the Superior Court. Therefore, the Superior Court never held a hearing, pursuant to 16 *Del. C.* § 5011(a), to determine whether the waiver of the six-month hearing should be approved. As a result of the waiver, which was never made known to the Superior Court, Taylor re-

mained an involuntary patient at the Hospital. The Superior Court's order committing Taylor expired while this appeal was pending.

■ The reformation or extension of a Section 5010(2) order of commitment is a judicial function which may not be delegated by the court or assumed *sua sponte* by the Hospital. 16 *Del.C.* §§ 5011–5012. *Cf. In re Lewis,* Del.Supr., 403 A.2d 1115, 1120 (1979); *James v. State,* Del.Supr., 385 A.2d 725, 727 (1978). In this case, the Hospital failed to follow two separate and distinct statutory mandates. First, the purported waiver was not approved by the Superior Court as required by Section 5011(a), which provides:

> An involuntary patient may waive any of the rights provided by this chapter if (i) *the court determines* that such waiver is voluntary and with the involuntary patient's knowing and intelligent consent, or if (ii) where the involuntary patient is incapable of knowingly and intelligently consenting, *the court,* upon application by counsel and after appropriate inquiry and finding of facts, approves such waiver for good cause shown. If the hearing provided for in § 5010 of this title is waived, *the court shall enter an order* of disposition in accordance with subdivision (2) of § 5010 of this title.

16 *Del.C.* § 5011(a) (emphasis added). Second, the Hospital was required to notify the Superior Court that Taylor's six-month commitment had expired and that she had not been discharged. Section 5012 provides:

### § 5012. Hospitalization.

(a) *Duties of hospital upon involuntary patient's admission.*—Upon the involuntary patient's admission to the hospital pursuant to court order, the hospital shall for a period not to exceed 6 months render treatment to the involuntary patient in accordance with professional

restraint upon the involuntary patient's liberty and dignity consistent both with affording mental health treatment and care with protecting the safety of the involuntary patient and the public.
16 *Del.C.* § 5010.

4. *See also* 16 *Del.C.* § 5010(2) (When the patient is found to be mentally ill, "the court shall enter an order of disposition, which disposition shall be effective for a period not to exceed 6 months.").

standards. *If by the expiration of 6 months the involuntary patient has not been discharged by the hospital,* and if in the opinion of the hospital the involuntary patient is still a mentally ill person, *the hospital shall so advise the court;* and the court shall order a further hearing to be held at the earliest practicable date.

(b) *Further hearing.*—In any further hearing the procedural requirements of § 5006 of this title shall govern, and the court may make such findings and orders as are permitted by § 5010 of this title; provided, that *the court may order that the involuntary patient's admission to the hospital be continued* for an indefinite period, in which case the hospital shall report to the court at intervals not more than 6 months as to the continued need for involuntary hospitalization, and the court shall review the involuntary patient's status at such 6–month intervals without being required to hold further hearings, until such time as the involuntary patient is discharged.

16 *Del.C.* § 5012 (emphasis added). We recognize that, in this case, Radulski, the Hospital, and all counsel were proceeding in good faith and in accordance with the ongoing medical evaluations relating to Taylor's condition. However, to the extent the action in this case has become a customary practice and results in the extension of commitment orders without judicial approval, it must not continue.[5]

On April. 19, 1988, oral arguments were presented in this case. This Court raised its concern about the authority by which Taylor remained committed, the possible interlocutory nature of the Superior Court's order, and the possible mootness of this appeal. Counsel were directed to exchange simultaneous memoranda regarding these issues. On April 22, 1988, three days after the oral arguments in this Court, the Superior Court conducted a hearing- where Taylor, Radulski, and Taylor's treating physician were present. On that same day, the Superior Court executed an order which, *inter alia,* extended *nunc pro tunc* the duration of the June 19, 1987 order.

*Finality of the Commitment Order*

The first procedural question this Court must address is whether the Superior Court's June 19, 1987 order, committing Taylor to the Hospital, is interlocutory or final. This Court's jurisdiction to hear interlocutory appeals is limited. *See* Supr.Ct. R. 42. The June 19, 1987 order was issued pursuant to the authority contained in 16 *Del.C.* § 5010(2). Section 5010 provides for either the discharge of the involuntary patient if that person is not mentally ill or for the commitment of the involuntary patient for six months if that person is mentally ill. No further hearings or orders are required to effectuate Section 5010.

■ "A final judgment is generally defined as one which determines the merits of the controversy or the rights of the parties and leaves nothing for future determination or consideration. The test is whether such judgment or decree determines the substantial merits of the controversy and the material issues litigated or necessarily

---

5. The supplemental memorandum of Radulski's attorney, which was filed with this Court, states:

Guardian Radulski waived patient's right to a six-month hearing in his letter of December 8, 1987 to Mr. Walls, counsel for the hospital. It was sent in accordance with the normal procedure in mental health hearings, under which Mr. Walls's office prepares the schedule of patients whose cases are to be heard each week, petitions the court for a hearing (and appointment of counsel in new cases), and notices the patient, family and counsel. The waiver was in response to a telephone notification to me from Mr. Walls's office that a six-month hearing would be scheduled in mid-December.

It is clear that the waiver letter, by reserving the right to a future hearing on the matter, contemplated the continued involuntary confinement of the patient respondent under an extension of the June 19 order.

If the Superior Court was not notified of the waiver by Mr. Walls's office so that the order could be formally modified as contemplated in the waiver letter, respondent should not suffer as a result. While in retrospect it might have been preferable to advise the court directly of the waiver, customary practice has been to coordinate scheduling of hearings and modifications of orders through Mr. Walls's office.

involved in the litigation." *Showell Poultry, Inc. v. Delmarva Poultry Corp.*, Del. Supr., 146 A.2d 794, 796 (1958). Applying this test to the Superior Court's June 19, 1987 order by which Taylor was committed to the Hospital, we find that it is a final judgment. The involuntary commitment statute specifically provides for appeals to this Court from such an order of disposition. 16 *Del.C.* § 5013(a). Therefore, once the June 19, 1987 order expired, Sections 5010(2) and 5012(a) required another hearing and, hence, another order to continue Taylor's involuntary commitment at the Hospital.[6]

### Mootness

The second procedural question we consider is whether the expiration of the June 19, 1987 order rendered the appeal of the order moot. Ordinarily, this Court will "decline to decide moot issues." *McDermott Inc. v. Lewis*, Del.Supr., 531 A.2d 206, 211 (1987) (citing *Sannini v. Casscells*, Del. Supr., 401 A.2d 927, 930 (1979)). "However, where the question is of public importance, and its impact on the law is real, this Court has recognized an exception to the above rule." *Id.* (citing *Darby v. New Castle Gunning Bedford Educ. Ass'n*, Del.Supr., 336 A.2d 209, 209 n. 1 (1975)). *See also State ex rel. Traub v. Brown*, Del.Supr., 197 A. 478, 479 (1938) (per curiam). The public-interest exception to the mootness doctrine is usually applied to issues which are "capable of repetition, yet evading review." *See Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

We find that the issue presented by this appeal, i.e., the correctness of the Superior Court's involuntary commitment of Taylor, is capable of repetition. However, such repetition will not evade review if, in the

6. *See infra* note 8.

7. The April 22, 1988 order stated, in part:
    The Order of this Court in the above matter dated June 17, 1987, [sic] which by its original terms would have expired December 17, 1987, is extended, *nunc pro tunc*, from its original

future, the attorneys utilize the procedures set forth in this Court's Rules. Those Rules specifically provide for expedited proceedings:

> **Expedited Scheduling.** Upon motion for good cause shown or upon the Court's order *sua sponte*, the Court may order an expedited schedule of any or all procedures, including a shortened time for the filing of briefs and other papers, in any appeal or other proceeding.

Supr.Ct.R. 25(d). Not only did counsel fail to avail themselves of this expedited procedure, but they also sought numerous time extensions that delayed the hearing of this appeal. Indeed, the appellant's opening brief was ultimately scheduled for filing nine days after the expiration of the June 19, 1987 order. *Cf. Stotland v. GAF Corp.*, Del.Supr., 469 A.2d 421, 423 (1983) (per curiam).

■ We find this appeal to be moot because the order from which the appeal was taken has expired by its own terms. We also find that the situation before this Court does not require the invocation of the public-interest exception to the mootness doctrine. Any public interest in the issues presented is more than counterbalanced by Taylor's private interest in being released from the Hospital in the absence of a viable order authorizing her continued commitment.

### The Superior Court's Nunc Pro Tunc Order

This appeal must be dismissed unless it was "revived" by the April 22, 1988 order of the Superior Court. *See* Supr. Ct. R. 29(b). We must, therefore, determine what consequences, if any, the April 22, 1988 order by the Superior Court has on our determination that this appeal is moot. The Superior Court's April 22, 1988 order sought to extend, *nunc pro tunc*, the duration of the June 19, 1987 order.[7] If the

expiration date, and will remain in effect pending the outcome of the appeal of said Order, unless the patient is sooner discharged by Delaware State Hospital as no longer in need of in-patient care and treatment.

Superior Court's action was a valid exercise of its jurisdiction, then the June 19, 1987 order would remain effective pending the outcome of this appeal and the application of the mootness doctrine to the case would be inappropriate.

With the exception of interlocutory appeals, the proper perfection of an appeal to this Court generally divests the trial court of its jurisdiction over the cause of action. *Eller v. State*, Del.Supr., 531 A.2d 948, 950–51 (1987); *Moore v. Moore*, Del. Supr., 144 A.2d 765, 767 (1958); *King v. Lank*, Del.Super., 61 A.2d 402, 404 (1948); 4 Am.Jur.2d *Appeal and Error* § 352 (1962); *Del.App.Hbk.* § 6.08 (1984). We recognize that in some instances the trial court may exercise its jurisdiction as to collateral or independent matters. *See, e.g., Park Oil, Inc. v. Getty Refining & Marketing Co.*, Del.Supr., 407 A.2d 537, 538 (1979) (per curiam); *Biggs Boiler Works Co. v. Smith*, Del.Supr., 82 A.2d 919, 919–20 (1951) (per curiam); 4 Am. Jur.2d *Appeal and Error* § 355 (1962); *Del.App.Hbk.* § 6.08 (1984). However, we find that the Superior Court's April 22, 1988 order falls within the general rule.

Upon the filing of the appeal to this Court, the Superior Court lost the power to amend the June 19, 1987 order. *Biggs Boiler Works Co. v. Smith*, 82 A.2d at 919. "[C]onfusion ... would result if, during the pendency of an appeal, the decree sought to be reviewed could be amended without leave of the appellate court." *Id.* at 920. Therefore, the Superior Court had no jurisdiction to extend the duration of the expired order because such an extension is

neither a collateral nor an independent matter.[8]

### Conclusion

The Superior Court had no jurisdiction to enter the order of April 22, 1988, which attempted to extend the duration of the June 19, 1987 order. Since the June 19, 1987 order has expired, this appeal is moot. Therefore, the appeal is DISMISSED.

---

8. Once the original commitment order has expired, as in this case, the Hospital is required to start the involuntary commitment procedures *ab initio*. For guidance in future cases, even when an appeal is pending, we note the proper procedures to follow:

The Hospital must petition the Superior Court to conduct a hearing before the expiration of the original commitment order. 16 *Del.C.* § 5012(a). If, after receiving a timely petition, a waiver is tendered, the Superior Court must schedule a hearing on the waiver of the patient's right to a six-month hearing pursuant to 16 *Del.C.* § 5011(a). At such a hearing and upon

making the requisite findings of fact, the Superior Court can order that the patient be *recommitted* to the Hospital. An order of recommitment, pursuant to a valid waiver, would be independently appealable to this Court. 16 *Del.C.* § 5013(a).

In the absence of a valid waiver and after receiving a timely petition, the Superior Court is required by statute to conduct a further hearing into the merits of a recommitment. 16 *Del.C.* § 5012(b). Following such a further hearing on the merits, any recommitment order would also be an independently appealable order. 16 *Del. C.* § 5013(a).